## CHICAGO & ALTON RAILROAD COMPANY *v.* TRANBARGER.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 214.   Argued March 19, 1915.—Decided June 1, 1915.

In an action for damages under the statute of Missouri requiring owners of railroads to maintain ditches along the right-of-way as amended in 1907 so as to require outlets for water across the rights-of-way and imposing liability and penalties for non-compliance within three months after completion and where the embankment causing damage had been erected more than three months prior to the amendment of 1907, *held* that:

The amendment to the statute was not an *ex post facto* law: it did not penalize the railroad company for the manner in which it originally built the embankment prior to the amendment but for the manner in which it maintained it subsequently thereto.

The time limit should properly be construed as relating to railroads

erected after the passage of the act and that, as to those already constructed reasonable time should be allowed.

It is not necessary for this court to determine what is a reasonable time for compliance with a police regulation, when that question is raised by one refusing compliance, not on that ground, but on the ground that the legislature had no power to enact the statute.

Even though the charter be irrepealable, common-law rules existing at the time the charter was granted are not so imported into the contract of the charter as to cause such contract to be impaired by subsequent enactment of proper police regulations.

No person has a vested right in any general rule of law or policy of legislation entitling him to insist upon its remaining unchanged for his benefit, nor is immunity from change of general rules of law to be implied as an unexpressed term of an express contract.

The police power of the State cannot be abdicated nor bargained away, is inalienable even by express grant, and all contract and property rights are held subject to its fair exercise; it embraces regulations designed to promote public convenience or general welfare as well as those in the interest of the public health, morals or safety.

A statute requiring owners of a railroad to provide means for passing water under embankments is a legitimate exercise of the police power and not a taking of their property without compensation. It amounts merely to an application of the maxim *sic utere tuo ut alienum non lædas.*

The enforcement of uncompensated obedience to legitimate police regulation is not a taking of property without compensation or without due process of law in the sense of the Fourteenth Amendment.

Although water may, under common-law rules, be a common enemy to all property, embankments of railroads, stretching across tracts of land that are liable to injury from surface water, differ from other constructions sufficiently to afford a substantial ground for classification and a statute otherwise legal is not unconstitutional under the equal protection provision of the Fourteenth Amendment because it applies exclusively to railroad embankments, whether the road be owned by individuals or corporations.

250 Missouri, 46, affirmed.

THE facts, which involve the constitutionality under the due process and impairment of contract provisions of the Federal Constitution of a statute of Missouri requiring owners of railroads to afford outlets for water across their rights of way, are stated in the opinion.

*Mr. Elliott H. Jones,* with whom *Mr. William C. Scarritt* and *Mr. Charles M. Miller* were on the brief, for plaintiff in error:

The Act of Missouri, of March 14, 1907, is an *ex post facto* law; it also impairs the contract between State and railroad. The act takes property without due process or compensation.

The police power of a State does not justify act of 1907 nor is the act a proper exercise of police.

The police power of the State is subject to constitutional limitations.

In support of these contentions see *Abbott* 'v. *Railroad,* 83 Missouri, 271, 280; *Anderson* v. *Kerns Drainage District,* 14 Indiana, 199; *Bailey* v. *Railroad Co.,* 4 Harr. (Del.) 389; Cooley on Const. Lim., p. 835; *Coster* v. *Tide Water Co.,* 18 N. J. Eq. 54; *Collier* v. *Railway Co.,* 48 Mo. App. 398; *Calder* v. *Bull,* 3 Dall. 386; *Clark* v. *Railway Co.,* 36 Missouri, 202; *Chicago &c. R. R.* v. *Chicago,* 166 U. 'S. 226; *Chicago &c. R. R.* v. *Chappell,* 124 Michigan, 72; *Chicago &c. R. R.* v. *Grimwood,* 200 U. S. 561; *Chicago* v. *Jackson,* 196 Illinois, 496; *Chronic* v. *Pugh,* 136 Illinois, 539; *Duncan* v. *Missouri,* 152 U. S. 377; *Dartmouth College* v. *Woodward,* 4 Wheat. 656; *Davidson* v. *New Orleans,* 96 U. S. 97; *Edwards* v. *Kearzy,* 96 U. S. 595; 3 Elliott on Railroads, § 937; *Fletcher* v. *Peck,* 6 Cranch, 137; *Fleming* v. *Hull,* 73 Iowa, 598; Freund on Police Power, §§ 511, 512; *Gifford Drainage Dist.* v. *Shroer,* 145 Indiana, 572; *Havemeyer* v. *Iowa Co.,* 70 U. S. (3 Wall.) 294; *Harrelson* v. *Railway,* 151 Missouri, 482; *Holden* v. *Hardy,* 169 U. S. 366; *Re Theresa Drainage District,* 90 Wisconsin, 301; *Re Cheesebrough,* 78 N. Y. 232; *Jones* v. *Railway,* 84 Missouri, 151; *Kenney* v. *Railroad,* 69 Mo. App. 569; *Lake Erie & W. R. R.* v. *Commonwealth,* 63 O. St. 23; *Lathrop* v. *Racine,* 110 Wisconsin, 461; *Lien* v. *Norman Co.,* 80 Minnesota, 58; *McCormick* v. *Railroad,* 57 Missouri,

433; *Muhlker* v. *N. Y. & H. R. R.*, 197 U. S. 544; *Moss* v. *Railway*, 85 Missouri, 89; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312; *Re Tuthill*, 163 N. Y. 136; *McQuillen* v. *Hatton*, 42 Ohio, 202; *Paddock* v. *Somes*, 102 Missouri, 226; *Payson* v. *People*, 75 Illinois, 276; *Ready* v. *Railroad*, 98 Mo. App. 467; *Railway* v. *Hough*, 61 Michigan, 507; *Schneider* v. *Railway*, 29 Mo. App. 68, 71; *Sloan* v. *Railroad*, 61 Missouri, 24; *United States* v. *Cent. Pac. R. R.*, 118 U. S. 235; *Walla Walla* v. *Water Co.*, 172 U. S. 1; *Burgess* v. *Salmon*, 97 U. S. 381; *Calloway County* v. *Foster*, 93 U. S. 570; *C., B. & Q. Ry.* v. *Drainage Commrs.*, 200 U. S. 561; *Jones* v. *Hannovan*, 55 Missouri, 462; *Land & Stock Co.* v. *Miller*, 170 Missouri, 252; *Matthews* v. *Railroad*, 121 Missouri, 298; 161 U. S. 1; *Parish* v. *M., K. & T. R. R.*, 63 Missouri, 284; *Skinner* v. *Railway*, 254 Missouri, 228; *Sarls* v. *United States*, 156 U. S. 570; *Wood* v. *Smith*, 114 Missouri, 180; *State* v. *Board of Trustees*, 175 Missouri, 52; *State ex rel. Circuit Atty.* v. *Railroad*, 48 Missouri, 468; *St. Joseph & Iowa Ry.* v. *Shambaugh*, 106 Missouri, 557, 569; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Harris*, 177 U. S. 305; *Watson* v. *Mercer*, 8 Pet. (U. S.) 110; *Wilson* v. *Railroad*, 64 Illinois, 542.

*Mr. Charles M. Hay*, with whom *Mr. Thomas T. Fauntleroy* and *Mr. Patrick H. Cullen* were on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Tranbarger, owner of 60 acres of farming land in Callaway County, Missouri, brought this action against the Railroad Company in a Missouri state court to recover damages and a penalty under § 1110 of the Missouri Revised Statutes of 1899, as amended by act of March 14, 1907, Sess. Acts, p. 169, of which the portion now pertinent is as follows:

"It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this State, and of any corporation, company or person constructing any railroad in this State, within three months after the completion of the same through any county in this State, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains, or water-courses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; .. . . and any corporation, company or person failing to comply with the provisions of this section shall incur a penalty not to exceed five hundred dollars, and be liable for all damages done by said neglect of duty."

A judgment for damages and a penalty of one hundred dollars was sustained by the Supreme Court of the State (250 Missouri, 46), and the case comes here upon questions respecting the validity of the statute, as construed and applied, in view of familiar provisions of the Federal Constitution.

The facts found by the Missouri Supreme Court to be within the pleadings and proofs and to be sustained by the verdict of the jury are these: Plaintiff's lands lie in what are known as the Missouri River bottoms. It is the habit of that river to overflow the bottoms from the west to the east in times of high water. Defendant's railroad extends across the bottoms from southwest to northeast, and along the easterly boundary of plaintiff's land. The roadbed is constructed of a solid earth embankment, varying in height from four to seven feet, and is not provided with traverse culverts, openings, or drains of any kind for the escape of surface water, but constitutes a solid barrier .

for collecting such waters, and causes them to back over and flood plaintiff's lands, which would not be overflowed except for that obstruction. The road was maintained in this condition for more than three months before a stated day in June, 1908, when the River overflowed its banks and the water ran across the bottoms until it reached the railroad embankment, which repelled it, so that it backed over, upon, and flooded plaintiff's land, causing substantial damage, which was attributable solely to the negligent failure of defendant to construct suitable openings across and through the solid embankment upon which its railroad tracks were laid, and suitable ditches and drains along the side of the roadbed, to connect with an existing ditch which would have afforded an outlet into the River or elsewhere without flooding plaintiff's land. It further appears from undisputed evidence cited in the brief of plaintiff in error that the railroad was constructed about the year 1872, and originally was carried by a trestle for a distance of 20 to 25 feet over a certain low spot in the river bottom, but that this opening was filled in about the year 1895, since which time the railroad bed has been maintained as a solid embankment across the bottom.

The statutory requirement of "openings across and through the right of way and roadbed" originated in the 1907 amendment of § 1110. Before that, and dating from the year 1874, the statute merely required railroads to construct ditches along each side of the roadbed. [Laws 1874, p. 121; Rev. Stat. 1879, § 810; Laws 1883, p. 50; Rev. Stat. 1889, § 2614; Laws 1891, p. 82; Rev. Stat. 1899, § 1110; *Collier* v. *Chicago & Alton Ry.* (1892), 48 Mo. App. 398, 402; *Kenney* v. *Kansas City &c. R. R.* (1897), 69 Mo. App. 569, 571.] It is upon the clause added in 1907 that the present action is founded, and upon that clause the questions before us are raised. It is attacked as an *ex post facto* law, as a law impairing the obligation of the contract between the State and the Railroad Company,

and as repugnant to the "due process" and "equal protection" provisions of the Fourteenth Amendment.

(1) The argument that in respect of its penalty feature the statute is invalid as an *ex post facto* law is sufficiently answered by pointing out that plaintiff in error is subjected to a penalty not because of the manner in which it originally constructed its railroad embankment, nor for anything else done or *omitted before the passage of the act of 1907, but because after that time it maintained the embankment in a manner prohibited by that act. The argument to the contrary is based upon a reading of the section that applies the limiting clause "within three months after the completion of the same" to railroads already in existence as well as to those to be constructed thereafter. The result is, according to the argument, that as the road of plaintiff in error was constructed upon a solid embankment at least as early as the year 1895, the act was violated as soon as enacted. This construction is so unreasonable that we should not adopt it unless required to do so by a decision of the state court of last resort. The language of the section as it now stands: "It shall be the duty of every corporation . . . owning or operating any railroad or branch thereof in this State, and of any corporation . . . constructing any railroad in this State, within three months after the completion of the same through any county in this State, to cause to be constructed and maintained suitable openings," etc., seems to us to be more reasonably construed as prescribing the express limit of three months only with respect to railroads afterwards constructed, and as allowing to railroads already in existence a reasonable time after the passage of the enactment within which to construct the openings. In adopting this meaning, we have regard not merely to the phrases employed, but to the previous course of legislation, which is set forth in the briefs but need not be here repeated. Whether we are

right or wrong about this, the duty to construct transverse outlets having originated with the act of 1907, the statute is of course to be construed as allowing some time—either three months, or a reasonable time more or less than that period—for their construction by railroads already in existence. The law had been upon the statute books for more than a year before the flood that gave rise to this action. Whether three months, or a year, was a reasonable time, or whether more time would reasonably be required for the construction of the prescribed opening across the railroad of plaintiff in error at the place in question, is a matter that we need not determine, since no such issue was raised in the state courts, plaintiff in error having contented itself with asserting that the legislature had no power to require it at any time after the act of 1907 to construct such an opening.

(2) Upon the question of impairment of contract, it appears that the railroad in question was constructed and afterwards leased to plaintiff in error in perpetuity by virtue of a charter and franchise granted to the Louisiana & Missouri River Railroad Company in the year 1870 (Laws, p. 93, §§ 22, 23, 43), by § 33 of which the company was exempted from the provisions of § 7 of Article I of the general corporation act of 1855 (Rev. Stat. 1855, p. 371), and thereby, it is claimed, relieved from the legislative power of alteration, suspension, and repeal. And while by the constitution of 1865 (in force at the time the railroad in question was authorized and constructed), railroad corporations could be formed only under general laws subject to amendment or repeal, it is contended that this did not apply to subsequent amendments of charters previously granted (*State, ex rel. Circuit Attorney* v. *Railroad,* 48 Missouri, 468; *St. Joseph & Iowa Ry.* v. *Shambaugh,* 106 Missouri, 557, 569), and it is pointed out that the charter of 1870 is an amendment of one enacted in 1868 (Laws, p. 97), and this in turn an amendment of

one enacted in 1859 (Laws 1859, 1st Sess., p. 400). It is further insisted that even if the State reserved to itself by the constitution of 1865 the right to alter or amend the corporate charter, this was relinquished when the constitution of 1875 went into effect, which contains no similar reservation. And hence, it is argued that, as applied to this company, the act of 1907 cannot be sustained as a charter amendment. This is disputed; but for present purposes we will assume the charter was irrepealable.

Next, it is insisted that for all purposes except those covered by the act of 1907, Missouri has at all times adhered to the common-law rule that surface water is a common enemy, against which every landowner may protect himself as best he can, and that this applies to and protects railroads as well as other landowners. *Abbott* v. *Kansas City &c. Ry.* (1884), 83 Missouri, 271, 280 *et seq.; Jones* v. *St. Louis &c. Ry.*, 84 Missouri, 151, 155; *Schneider* v. *Missouri Pacific Ry.*, 29 Mo. App. 68, 72; *Ready* v. *Missouri Pacific Ry.*, 98 Mo. App. 467. The conclusion sought to be drawn is that the common-law rule, as it existed at the time the railroad was built and the right of way acquired, entered into the contract between the State and the company, and into the contracts between the company and the landowners from whom its right of way was acquired, and that the immunity from prosecution and from private action alike was in the nature of an appurtenance to the land, the enjoyment of which could not be impaired by subsequent legislation.

Of the cases cited in support of this contention the only one that has a semblance of pertinency is *Muhlker* v. *Harlem Railroad Co.*, 197 U. S. 544, and this is readily distinguishable. There the right in question was the easement of light and air, which of course pertains closely to the use and enjoyment of the land. But the right to maintain a railroad embankment or other artificial structure in such a manner as to deflect surface water from its

usual course, and thereby injure the land of another, has little reference to the substantial enjoyment of the railroad right of way. Nor is it at all essential to the protection of the railroad itself from surface water. It cannot reasonably be contended that a railroad cannot be maintained and operated as safely and as conveniently over a bridge, trestle, culvert, or other opening calculated to admit the passage of surface water, as upon a solid embankment, or that there is any substantial advantage in favor of the latter except that it avoids the expenditure necessary to be made for the construction and maintenance of openings in order that the embankment shall no longer be the occasion of injury to the lands of others. The previous immunity from responsibility for such injury was nothing more than a general rule of law, which was not in terms or by necessary intendment imported into the contract. For just as no person has a vested right in any general rule of law or policy of legislation entitling him to insist that it shall remain unchanged for his benefit (*Munn* v. *Illinois*, 94 U. S. 113, 134; *Hurtado* v. *California*, 110 U. S. 516, 532; *Buttfield* v. *Stranahan*, 192 U. S. 470, 493; *Martin* v. *Pittsburg &c. R. R.*, 203 U. S. 284, 294), so an immunity from a change of the general rules of law will not ordinarily be implied as an unexpressed term of an express contract. See *Gross* v. *United States Mortgage Co.*, 108 U. S. 477, 488; *Pennsylvania R. R.* v. *Miller*, 132 U. S. 75, 83.

(3) But a more satisfactory answer to the argument under the contract clause, and one which at the same time refutes the contention of plaintiff in error under the due process clause, is that the statute in question was passed under the police power of the State for the general benefit of the community at large and for the purpose of preventing unnecessary and wide-spread injury to property.

It is established by repeated decisions of this court that neither of these provisions of the Federal Constitution

has the effect of overriding the power of the State to establish all regulations reasonably necessary to secure the health, safety, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 558, and cases cited. And it is also settled that the police power embraces regulations designed to promote the public convenience or the general welfare and prosperity, as well as those in the interest of the public health, morals, or safety. *Lake Shore & Mich. Southern Ry.* v. *Ohio*, 173 U. S. 285, 292; *C., B. & Q. Ry.* v. *Drainage Commissioners*, 200 U. S. 561, 592; *Bacon* v. *Walker*, 204 U. S. 311, 317.

We deem it very clear that the act under consideration is a legitimate exercise of the police power, and not in any proper sense a taking of the property of plaintiff in error. The case is not at all analogous to those which have held that the taking of a right of way across one's land for a drainage ditch, where no water-course exists, is a taking of property within the meaning of the Constitution. The present regulation is for the prevention of damage attributable to the railroad embankment itself, and amounts merely to an application of the maxim *sic utere tuo ut alienum non lædas.* Of course, compliance with it involves the expenditure of money; but so does compliance with regulations requiring a railroad company to keep its roadbed and right of way free from combustible matters; to provide its locomotive engines with spark arresters; to fence its tracks; to provide cattle guards and gates at crossings, or bridges or viaducts, or the like. Such regulations as these are closely analogous in principle, and have been many times sustained as constitutional. *Minneapolis Railway Co.* v. *Beckwith*, 129 U. S. 26, 31; *Minneapolis & St. Louis Railway* v. *Em.nons*, 149 U. S. 364, 367; *St. Louis & San Francisco Ry.* v. *Mathews*, 165 U. S.

1; *Chicago &c. Ry.* v. *Minneapolis*, 232 U. S. 430, 438; *Atlantic Coast Line* v. *Goldsboro*, 232 U. S. 548, 560, 561.

And it is well settled that the enforcement of uncompensated obedience to a legitimate regulation established under the police power is not a taking of property without compensation, or without due process of law, in the sense of the Fourteenth Amendment. *Chicago, Burlington &c. R. R.* v. *Chicago*, 166 U. S. 226, 255; *New Orleans Gas Co.* v. *Drainage Comm.*, 197 U. S. 453, 462; *C., B. & Q. Ry.* v. *Drainage Commissioners*, 200 U. S. 561, 591.

(4) The contention that the statute in question denies to plaintiff in error the equal protection of the laws is not seriously pressed, and is quite unsubstantial. Railroad embankments, stretching unbroken across tracts of land that are liable to injury from surface waters, differ so materially from other artificial constructions and improvements to which the doctrine of the "common enemy" applies, that there is very plainly a substantial ground for classification with respect to the object of the legislation. The statute applies alike to corporations, companies, and persons owning or operating railroads that are so constructed as to obstruct the flow of drainage and surface waters, and we deem it unexceptionable in this regard.

*Judgment affirmed.*