**CROMWELL–FRANKLIN OIL CO. v. OKLAHOMA CITY.**

No. 1143.

District Court, W. D. Oklahoma.
Sept. 20, 1930.

the city of Oklahoma City is a municipal corporation; that the amount in controversy exceeds $3,000; that on the 15th of October, 1929, and for a long time prior thereto, one W. F. Harn was the owner and in possession of certain real estate adjacent to Oklahoma City, which we will designate for brevity as the Harn tract, and that on said date, the said W. F. Harn and wife executed an oil and gas mining lease to the complainant; that said lease requires the complainant to commence the drilling of an oil and gas well on said property within one year from date of the lease. At the time of the execution of said lease, the said Harn tract was not included within the city limits, but soon thereafter, on the 22d of October, 1929, the city passed an ordinance known as Ordinance No. 3743, extending the corporate limits or attempting to extend the corporate limits so as to include among other pieces and parcels of land adjacent to Oklahoma City the said Harn tract; that said tract consists of 104 acres, and has never been platted, but used as a farm; that said tract was not adjacent to or abutted by the city of Oklahoma City on three sides thereof; that no consent of the owner was had at the time said ordinance was passed, and that the owner did not give his consent thereto, but, on the other hand, protested against the bringing of said property within said city; that the purpose of bringing the said property within the limits of the city was to prevent the drilling of oil and gas wells thereon, and to prevent the development of said tract for oil purposes; that prior to the adoption of Ordinance No. 3743, the defendant city on the 26th of July, 1928, passed an ordinance known as Ordinance No. 3429, by which there was adopted a general code of ordinances by the city of Oklahoma City, among which, and as a part thereof, is what is known as chapter 22 of the general ordinances of Oklahoma City; that said chapter 22 of said general ordinances is what is known as defendant's zoning ordinance, which has been amended by several ordinances passed from time to time down to and including July, 1930; that said general code of ordinances of defendant city divides the city of Oklahoma City into districts or zones and attempts to, on its face, regulate the use of property in each of said zones or districts, and designates the use of property in what is called U-1 district as residence district

P. J. Carey, of Oklahoma City, Okl., and George N. Otey, and L. E. Beattie, both of Ardmore, Okl., for complainant.

M. W. McKenzie, Municipal Counselor, A. L. Hull, Asst. Municipal Counselor, both of Oklahoma City, Okl., and Fred Hansen, Asst. Atty. Gen., state of Oklahoma, for defendant.

VAUGHT, District Judge.

In this action, hearing was had upon the motion of the defendant to dismiss complainant's bill. The bill alleges that the complainant is a Delaware corporation, licensed to do business in Oklahoma; that

or use, and provides that no oil or gas well shall be drilled in said district. It further provides that oil and gas wells can be drilled only in what is designated as U-7 zone or use district, and places the Harn tract covered by the lease of this complainant in what is known as the U-1 zone or district, and provides that an attempt to drill oil and gas wells in said district shall be unlawful, and that no permit for the drilling of oil or gas wells shall be granted by the superintendent of buildings except in what has been designated as the U-7 zone or district; that said defendant city by its ordinances by which it is seeking to enforce under what it terms its police power to protect the health and safety of its citizens, denies to complainant the right to use its said property for the purpose of developing the same for oil and gas, and at the same time allows the drilling of oil and gas wells within other parts of the corporate limits of said city where same is densely surrounded by residence buildings, and allows said wells to be drilled within 100 feet of residences in such other sections where it has designated the same as part of the U-7 zone, and is allowing the drilling of oil and gas wells in parts of the city where the land has been platted into lots and blocks, and allows the drilling of wells on such city blocks, which blocks contain less than 5 acres, while it denies this plaintiff the right to drill on a tract of land of 104 acres which has never been platted or divided into smaller tracts, and which tract of land was, and still is, used as farm land.

The bill makes further allegations with reference to complainant's ability to drill oil wells so that the same would not be within 500 feet of residences or other buildings, and that same could be drilled without objection or annoyance or conditions which would be objectionable to residents of the adjoining property; that by denying the complainant the right to drill for oil and gas upon said lease, that the said act on the part of the defendant city is the taking of complainant's entire property without compensation which is in direct conflict with the Constitution of the United States, and the Fourteenth Amendment thereto; that the acts of the defendant city in the enactment of said ordinances were unreasonable, arbitrary, and discriminatory; that the oil pool developed south of Oklahoma City underlies the lease of the complainant, and that the drilling of oil wells in the recognized U-7 district is damaging to the complainant's rights in that it reduces the gas pressure therein, and constitutes the unlawful taking of property without compensation; that the value of said lease is $1,000,000, and that unless said complainant is permitted to begin the drilling of a well on or before the 15th of October, 1930, it will lose its entire right, and that said act on the part of the city amounts to a confiscation by said city of complainant's property without compensation, and without due process of law; that the said defendant city has refused, on petition of the landowner, W. F. Harn, to place the said property known as the Harn tract in the U-7 zone or district, and under its present ordinances the superintendent of buildings is denied the right to even issue a permit, and the drilling of a well for oil and gas on said properties is declared unlawful, and said bill prays for an injunction perpetually enjoining the said city from the enforcement of its ordinances by interfering with the drilling of said lease by the complainant.

The motion of defendant prays for the dismissal of the bill of complaint in this action, and for the purposes of said motion alleges that under chapter 177, Session Laws of Oklahoma, 1923, the said city created a city planning commission for the purpose of preparing plans for the systematic development and betterment of such municipality as a place of residence, and for business; that under and by virtue of and pursuant to chapter 178, Session Laws of Oklahoma, 1923, the city of Oklahoma City adopted a zoning ordinance for the systematic development and betterment of said city based upon a comprehensive plan, designed to lessen the congestion in the streets and to secure safety from fire, panic, and other dangers, and to promote the health and general welfare, and to provide adequate light and air, and prevent the overcrowding of land, and to avoid undue concentration of population, and to facilitate the adequate provisions of transportation, water, sewage, schools, parks, and other public requirements, the same being chapter 22, Oklahoma City general ordinances of 1928, which said ordinance was in full force and effect, together with the amendments thereto, at and prior to the commencement of this action, and at and prior to the times set out in the bill

of complaint of the complainant. A copy of chapter 22 of said Oklahoma City general ordinances of 1928 is pleaded as Exhibit O; that chapter 22 aforesaid was amended on the 3d day of December, 1929, by Ordinance No. 3774, which became effective on the 3d day of January, 1930, whereby there was provided in and made a part of chapter 22 aforesaid, the provisions relating to the U-7 use district for the development of oil and gas, and a copy of said Ordinance No. 3774 is pleaded as Exhibit 1; that said chapter 22, Oklahoma City general ordinances 1928, was further amended by adding thereto an ordinance known as Ordinance No. 3865, which said ordinance was passed on the 15th of April, 1930, and went into effect on the 15th of May, 1930, in which the property set over into the U-7 use district, and upon which the development for oil and gas mining purposes was permitted within the corporate limits of said city, is fully set out and described in detail, a copy of which Ordinance No. 3865 is pleaded as Exhibit 2.

The defendant further states that by Ordinance No. 3743, passed on the 22d day of October, 1929, with the emergency which went into effect on the same date, that the corporate limits of the city of Oklahoma City were extended, and there was set out in detail in said Ordinance No. 3743, a complete and accurate description of the property annexed to and included within the corporate limits of said city, in which was and is included the property set out in the bill of complaint in this case, a copy of which ordinance is pleaded as Exhibit 3.

The defendant further states:

(1) That the bill of complaint fails to state facts sufficient to constitute an action for equitable relief in favor of the complainant and against the defendant.

(2) That the bill of complaint fails to state facts sufficient to constitute a cause of action in equity in favor of the complainant and against the defendant.

(3) That the bill of complaint shows upon its face that the complainant has a plain, speedy, and adequate remedy at law.

(4) That this court is without jurisdiction of the subject-matter.

Upon the hearing, there was introduced as evidence in support of the motion to dismiss, by agreement of counsel, a map of the city, showing the city limits, **U-7** zone, and the Harn tract, and it was further agreed that with reference to all physical facts which are of common knowledge, the map might be considered in evidence in passing upon the motion to dismiss.

The court fully recognizes the importance of this case, not only to the complainant, but to the defendant city, and the residents thereof, and deems it proper to make a brief observation as to actual conditions existing at the times mentioned in the bill with reference to the location of this particular property.

It is in evidence from the map introduced that the low part of the lands comprising Oklahoma City is along what is known as the North Canadian river, and the bottoms adjacent thereto, all of which lie in the south part of said city, or rather between that portion of the city lying north of the North Canadian river, and the extreme southern portion of Oklahoma City known as Capitol Hill; that the Harn tract is located north of 16th street, or rather north of the alley north of 16th street, and immediately east and adjacent to the Santa Fé right of way, and a portion of said tract adjacent to the Santa Fé right of way extends to 23d street. Immediately north and northeast of said Harn tract is what is known as the Capitol addition, the State Capitol being immediately north and east of the Harn tract approximately one-half a block. The lands immediately north of the Harn tract consist of a strip two blocks wide between 23d street and the Harn tract, and which is a part of Capitol addition. Immediately east of the Harn tract is land owned by the state and Lincoln boulevard, a wide boulevard with parks in the center, and a paved street on either side of said park extending from 13th street to the State Capitol building, and is the southern approach to the Capitol; that said Harn tract is approximately 1¼ miles north of the Rock Island Railroad at its intersection with the Santa Fé; that the city limits north of the Harn tract extend approximately 2 miles; on the east of the Harn tract, the city limits extend approximately 2 miles and on the west the city limits extend approximately 4 miles; that south of the Harn tract the city is built up practically solid with residences with occasional community centers, consisting of drug stores, grocery stores, and small

business houses; that to the north for several blocks it is built more or less solidly with residences, and for the entire distance of 2 miles, it consists of residence property but not so thickly built. On the east it is solidly built with residence property for 2 miles, and on the west it is solidly built with residences for approximately 3 to 3½ miles, and immediately adjoining the Santa Fé right of way to the west, and west of the Harn tract adjacent to the right of way, are business houses consisting of lumber yards and similar business institutions; that immediately west of the row of business houses adjacent to the Santa Fé right of way there is what is known as Winan's addition. Winan's addition, East Highland addition, which is immediately south of the Harn tract, and Lincoln Terrace addition immediately east of the Harn tract are three of the most exclusive and best built residence sections in the city.

The U-7 zone referred to in the pleadings consists of certain lands lying adjacent to the oil fields now being developed in the southeastern part of the city, and along the low lands or the river bottoms and what is known as the railroad section. No part of said U-7 zone is north of the original Rock Island tracks, except a part of Fair Park, and 80 acres immediatedly north of Fair Park through which one of the railroads runs. With the exception, however, of that portion of Fair Park, and the 80 acres adjoining thereto, no part of U-7 zone extends north of the Rock Island Railroad, and no oil wells are drilling or have been drilled within 1½ miles of the Harn tract.

It is the contention of the complainant that because it obtained a lease on the Harn tract immediately prior to the taking of said tract into the city, and prior to the time when said tract was placed in the U-1 zone or residence zone, that the complainant acquired certain property rights, which, if said ordinances are permitted to be enforced, will be entirely destroyed, and that if the city in passing said ordinances did so in the exercise of its police power, that in the exercise of such power this complainant could not be deprived of his right to drill on said property for oil and gas. This bill challenges not so much the validity of what is known as a zoning ordinance, as its application to the property of this complainant.

The court will take judicial notice of the fact that the building of modern cities is a serious problem; that it involves, in order to protect the life, peace, safety, and happiness of its citizens, the exercise of powers only a few years ago not recognized by individuals, legislative bodies, or courts; that in recent years the numerous modern appliances and conveniences, such as electric light and power, gas, sanitation, city transportation, and other like agencies, together with the invasion of various portions of the city by industrial enterprises, stores, factories, and the like, have made it necessary for a city in the exercise of its police powers to take advanced steps in what is known as the zoning or dividing of the city into districts, designating in what districts certain classes of residences, hotels, rooming houses, stores, factories, and other industrial enterprises shall be located, and this is on the theory that private rights and conveniences must be recognized as inferior to what is known as the common or public good, or to the best interests of the city as a whole.

Oklahoma City is a rapidly growing city, having grown from a population of 10,000 in 1900 to a population of 185,000 in 1930, and having increased in population during the past ten years, from 1920 to 1930, more than 100 per cent. Recognizing this rapid growth and the possibilities for equal, if not greater future growth, the city, with other cities, secured the passage of an act by the Oklahoma Legislature, chapter 178, Session Laws 1923, entitled: "An Act relating to the powers of cities, with respect to buildings, sites, areas, trades and industries; authorizing the creation of zoning districts, and declaring an emergency." This act is known as the "Standard Zoning Enabling Act," and gives the city power to zone the city into zones or districts, and to designate what classes of residences, business houses, industries, and so forth shall be located in each zone.

Pursuant to the powers granted said city by said legislative act, the city of Oklahoma City enacted Ordinance No. 2634, which is a comprehensive zoning ordinance regulating the character of buildings which may be lawfully erected, and the character of business that may be lawfully carried on in designated districts. Both the act of 1923, known as the Standard Zoning Enabling Act, and the Okla-

homa City Ordinance No. 2634, have been considered by the courts of Oklahoma, and on appeal from the District Court of Oklahoma county, the Supreme Court of Oklahoma, In re Dawson et al., 136 Okl. 113, 277 P. 226, 227, upholds the validity of said legislative act, and of said Ordinance No. 2634. In an opinion by Justice Hefner, the Supreme Court said:

"The zoning law idea is not entirely new, because it has been carried on in a way for many years in the form of building codes, fireproof building zones, ordinances regulating slaughterhouses, garages, and filling stations. All of these regulations have been upheld by the courts as a valid exercise of police power. It is only in recent years, however, that ordinances have been enacted which attempt to zone cities on a comprehensive basis covering all the property within a city's limits and in accordance with comprehensive and detailed planning for the future development of the whole city, and taking into consideration the welfare of the city and its inhabitants as a whole. By this act, Oklahoma adopted what is known as the "Standard Zoning Enabling Act." In recent years most of the states in the United States have adopted, in substantial form, the same act. Many cases have now been adjudicated wherein the zoning law principle involved herein has been upheld. One of the leading cases is that of the Village of Euclid et al. v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. That suit was brought by the owner of unimproved land within the corporate limits of the village, who sought the relief upon the ground, because of the building restrictions imposed, the ordinance operated to reduce the normal value of his property, and to deprive him of liberty and property without due process of law. At page 386 [of 272 U.S.], 47 S.Ct. 114, [at page 118, 71 L.Ed. 303, 54 A.L. R. 1016], Mr. Justice Sutherland, speaking for the court said:

" 'Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the meaning, but to the application of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall.' "

The Supreme Court of Oklahoma, therefore, having upheld the act of the Oklahoma Legislature above referred to, and having upheld the validity of the zoning Ordinance No. 2634 of Oklahoma City, said decision of the Supreme Court of Oklahoma in thus construing said act, and said ordinance is binding upon this court.

Following said ordinance No. 2634, the city of Oklahoma City enacted another ordinance known as chapter 22 of Oklahoma City general ordinances of 1928, which, as amended April 15, 1930, proceeded to divide said city into zones. Zone U-1 is what is known as the residence zone. Zone U-7 designates territory in which the drilling of oil and gas wells is permitted. By amendment to the said ordinance, the property known as the Harn tract was set over into the U-1 zone or the residence section. The complainant assails this act on the part of the city of Oklahoma City as unreasonable, arbitrary, discriminatory, and void, and in direct conflict with the Constitution of the United States, and the Fourteenth Amendment thereto.

It is alleged in the bill that on the 15th of October, 1929, the Harn lease was executed to this complainant, and that on the 22d day of October, 1929, without

notice, the city passed an ordinance, No. 3743, extending the corporate limits of Oklahoma City to include the Harn tract, and that on the 26th of July, 1929, the city passed Ordinance No. 3429, placing the Harn tract in U-1 zone, or the residence section.

While the bill states that three sides of the Harn tract were not adjacent to the city limits, yet the court finds from the physical facts, and the exhibits introduced, including the map of Oklahoma City, that the Harn tract at the time it was taken into the city was adjacent to said city on three sides, and was separated from the city merely by Lincoln boulevard on the fourth side, and said bill does not allege, nor is it apparent from any admissions at the hearing, whether or not Lincoln boulevard which was paved and developed by the state of Oklahoma as a part of the State Capitol grounds, was actually part of Oklahoma City. The court, therefore, can conclude as reasonably as otherwise that the said Harn tract is adjacent to the city, even on the east side. Therefore, under the provisions of the act of the Legislature above referred to, the city had the power under the circumstances by proper ordinance to include the Harn tract within the city limits, even without notice to the owner thereof.

The next contention of complainant is that even though the city had the right to extend the city limits to include the Harn tract without notice, that it did not have the right to include the said Harn tract in zone U-1, and its refusal to place said Harn tract in zone U-7 at the request of the owner of said tract, and this complainant having acquired an oil and gas mineral lease on said lands prior to the time that said lands were taken into the city proper, said ordinances would not be binding upon this complainant as it by said lease secured vested rights which were not subject to the police power of the city. If the zoning ordinance would have been valid as against owner Harn, could he, by divesting himself of a portion of the mineral rights, thus defeat the application of the ordinance? In the judgment of the court, this is the question that is involved in this lawsuit.

Counsel for complainant have cited Dobbins v. Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169.

In that case the city of Los Angeles adopted an ordinance making it unlawful to erect and maintain gas works outside of a certain district described in the ordinance, and fixing penalties for the violation thereof. While this ordinance was in force, the plaintiff in error made a contract with the Valley Gas & Fuel Company for the erection of certain gas works upon territory to be thereafter designated by her, and purchased lands within the limits of the privileged district as fixed by the ordinance. Thereafter, the board of fire commissioners of Los Angeles granted to the plaintiff in error the privilege to erect the gas works upon the territory aforesaid. The land was purchased, foundations were constructed at considerable expense, and then the city passed a second ordinance amending the first ordinance, limiting the boundaries of the territory within which the erection of gas works was permitted in said city as to include the premises of plaintiff in error within the prohibited territory.

The opinion further recites that there were no changes in existing conditions within the city of Los Angeles between the passage of the first and second ordinances, and therefore the passage of the second ordinance under the circumstances was an unreasonable exercise of police power.

This court has no fault to find with that decision. In that opinion, however, quoting from Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 390, 42 L.Ed. 780, the court says:

"The question in each case is whether the legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoliation of a particular class."

Counsel for complainant practically rest their case upon Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321. In that case, the Pennsylvania Coal Company, being the owner of certain lands upon which portions of the town of Scranton were thereafter built, sold to individuals the surface rights of said lands specifically providing, however, in the conveyance for the reservation of all minerals and the right to mine therefor. The Legislature of Pennsylvania thereafter enacted a law (52 P.S. Pa. § 661 et seq.) prohibiting the

mining of anthracite coal, so as to cause the caving in, collapse, or subsidence of public buildings, streets, tracks, road beds, dwellings, and so forth. The defendant Mahon became the purchaser of certain lots from the coal company, and when it was apparent that the coal company would mine under his property for coal, he brought the action against the coal company relying upon the Pennsylvania statute for his protection. The court held in that case that the prohibition in the legislative act exceeded the police power, whether viewed as a protection to private surface owners or to cities having only surface rights, and contravened the rights of the coal owner under the contract clause of the Constitution (article 1, § 10), and the due process of law clause of the Fourteenth Amendment.

I do not concede the application of that case to the instant case. That was an action between two private parties. It involved a contract, and the other purchasers of the surface rights had actual knowledge of the rights of the coal company to mine for coal prior to their occupation.

The leading case in support of the contention of the defendant, and the case which perhaps has been cited more often in recent years than any other case touching the application of the zoning ordinance is Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 121, 71 L.Ed. 303, 54 A.L.R. 1016. In that case the village of Euclid, which is a suburb of Cleveland, Ohio, passed a zoning ordinance. Euclid is a village of from five to ten thousand people and has an area of 12 to 14 square miles, the greater part of which is farm lands or unimproved acreage. The Ambler Company was the owner of a tract of land containing 68 acres situated in the westerly end of the village abutting on Euclid avenue on the south, and the Nickel Plate Railroad to the north. In November, 1922, the village council adopted an ordinance establishing a comprehensive zoning plan, regulating and restricting the location of trades, industries, apartment houses, two-family houses, single family houses, etc., the lot area to be built upon, the size and height of buildings, and so forth. The entire area of the village was divided by the ordinance into six classes of use districts, denominated U-1 to U-6, inclusive. A portion of the land in question was placed in different zones. The bill alleged that if the land in question, which was then vacant, could be used for industrial purposes, that it had a value of $10,000 per acre, but if the use be limited to residential purposes, the market value was not in excess of $2,500 per acre, and attacked the validity of said zoning ordinance. A portion of this opinion is quoted by the Supreme Court of Oklahoma in Re Dawson, supra, and it is not necessary to repeat it here. After citing numerous authorities, the court concludes:

"Under these circumstances, therefore, it is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them."

A case in point has recently been decided by the United States District Court of Kansas, Marrs v. City of Oxford, 24 F.(2d) 541. This case involves the validity of an ordinance passed by the city of Oxford regulating the drilling of oil and gas wells on certain property, and considers the character of averments in a bill in equity necessary to state a cause of action. The court says in the syllabus:

"On motion to dismiss bills in equity, facts well pleaded are considered to be true; but court is not required to concede conclusions of fact which are opposed to the common knowledge of mankind."

"On motions to dismiss bills in equity to enjoin enforcement of ordinance, claimed to be void, court may inquire into proper reasons for the ordinance."

"General allegations in bills to restrain enforcement of city ordinance regulating drilling on town lots that drilling of an oil well is not unsafe, and is not detrimental to comfort of nearby residents, and is not dangerous, are mere conclusions of fact, which were not confessed by motion to dismiss."

"Quality of interest which landowner has in oil underneath his property is determined by laws of state where property is located."

This opinion was affirmed in (C.C.A.) 32 F.(2d) 134, 67 A.L.R. 1336. See, also, De Lano v. City of Tulsa et al. (C. C.A.) 26 F.(2d) 640; Reinman v. Little

Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900, quoting from the syllabus:

"The decision of the state court of last resort that a municipal ordinance is within the scope of the power conferred on the municipality by the legislature is conclusive upon this court.

"Where the state court has held that an ordinance is within the power conferred on the municipality it must be regarded as a state law within the meaning of the Federal Constitution."

Complainant contends that it has a vested right to drill for oil which is not subject to regulation by the police power of the city.

In Chicago & A. R. Co. v. Tranbarger, 238 U.S. 67, 35 S.Ct. 678, 682, 59 L.Ed. 1204, Mr. Justice Pitney said:

"It is established by repeated decisions of this court that neither of these provisions of the Federal Constitution has the effect of overriding the power of the state to establish all regulations reasonably necessary to secure the health, safety, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; *and that all contract and property rights are held subject to its fair exercise.* Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721, 726, and cases cited. And it is also settled that the police power embraces regulations designed to promote the public convenience or the general welfare and prosperity, as well as those in the interest of the public health, morals, or safety. Lake Shore & Mich. Southern R. Co. v. Ohio, 173 U.S. 285, 292, 19 S. Ct. 465, 43 L.Ed. 702, 704; Chicago, B. & Q. R. Co. v. Drainage Commissioners, 200 U.S. 561, 592, 26 S.Ct. 341, 50 L.Ed. 596, 609, 4 Ann.Cas. 1175; Bacon v. Walker, 204 U.S. 311, 317, 27 S.Ct. 289, 51 L.Ed. 499, 502. * * * And it is well settled that the *enforcement of uncompensated obedience to a legitimate regulation established under the police power is not a taking of property without compensation, or without due process of law,* in the sense of the 14th Amendment." (Italics ours.)

In Hadacheck v. Sebastian, Chief of Police of city of Los Angeles, 239 U.S. 394, 36 S.Ct. 143, 145, 60 L.Ed. 348, Ann. Cas.1917B, 927, it was charged by Hadacheck that an ordinance passed by the city of Los Angeles was discriminatory and unreasonable. The court said:

"We think the conclusion of the court is justified by the evidence and makes it unnecessary to review the many cases cited by petitioner in which it is' decided that the police power of a state cannot be arbitrarily exercised. The principle is familiar, but in any given case it must plainly appear to apply. It is to be remembered that we are dealing with one of the most essential powers of government,—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. *A vested interest cannot be asserted against it because of conditions once obtaining.* Chicago & Alton R. Co. v. Tranbarger, 238 U.S. 67, 78, 35 S.Ct. 678, 59 L.Ed. 1204, 1211. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way, they must yield to the good of the community. The logical result of petitioner's contention would seem to be that a city could not be formed or enlarged against the resistance of an occupant of the ground, and that if it grows at all it can only grow as the environment of the occupations that are usually banished to the purlieus. * * * We must accord good faith to the city in the absence of a clear showing to the contrary and an honest exercise of judgment upon the circumstances which induced its action."

Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 595, 71 L.Ed. 1074, was a case wherein the plaintiff, whose building lot had been placed within a restricted zone under a zoning ordinance of the city of Los Angeles, sought to have said ordinance declared void for the reason that it was repugnant to the due process of law and equal protection clauses of the Fourteenth Amendment. The court sustained the ordinance and said:

"The effect of the evidence is to show that the entire neighborhood, at the time of the passage of the zoning ordinance, was largely unimproved, but in course of rapid development. The common council of the city, upon these and other facts, concluded that the public welfare would be promoted by constituting the area, includ-

ing the property of plaintiffs in error, a zone 'B' district, and it is impossible for us to say that their conclusion in that respect was clearly arbitrary and unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. Euclid v. Ambler Co., supra, 272 U.S. 365, at page 388, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Radice v. New York, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690; Hadacheck v. Sebastian, 239 U.S. 394, 408, 412-414, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927; Cusack Co. v. City of Chicago, 242 U.S. 526, 530, 531, 37 S.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas.1917C, 594; Rast v. Van Deman & Lewis Co., 240 U.S. 342, 357, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas. 1917B, 455; Price v. Illinois, 238 U.S. 446, 452, 35 S.Ct. 892, 59 L.Ed. 1400."

In the last case by the Supreme Court on this subject, Standard Oil Co. v. City of Marysville, 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856, the court said:

"We need not labor the point, long settled, that, where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision. Zahn v. Board of Public Works, 274 U.S. 325, 328, 47 S.Ct. 594, 71 L.Ed. 1074; Hadacheck v. Sebastian, 239 U.S. 394, 408-412, 413, 414, 36 S.Ct. 143, 60 L.Ed. 348, Ann. Cas.1917B, 927; Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016," and numerous other cases.

█ The court is of the opinion that since the bill pleads various ordinances, that the complainant in this case could not, in this action, question the validity of the ordinance taking the Harn tract into Oklahoma City as that would be a collateral attack. However, the court is of the opinion that from the pleadings and the exhibits that said ordinance taking the Harn tract into the city was a valid ordinance, and since the only question left to be determined is whether or not in the application of the ordinance to the Harn tract in placing it in the U-1 zone or residence section, is a reasonable exercise of police power, and whether or not the application and enforcement of said ordinance would deprive the complainant of rights guaranteed to him by the Constitution of the United States, the court feels that the foregoing authorities are conclusive.

█ The bill alleges that said ordinance in its application is unreasonable, confiscatory, and arbitrary, but the only fact which is pleaded in the bill which could be considered as supporting said conclusions is that the city permits the drilling of wells in U-7 zone, where the population is dense, and where there would be as much danger as there would be in this particular case.

The court feels that is not a sufficient allegation to state a cause of action. Suppose that the city made a mistake in certain of the sections of the U-zone, 4 or 5 miles from the Harn tract? The pleadings upon their face taken with the ordinances and the descriptions therein contained, and the map of the city as admitted in evidence, show that all of the U-zone is in an entirely different section of the city from the Harn tract, and that the Harn tract is in one of the most beautiful, expensive, and highly developed residence sections of the city. It adjoins the Capitol, is within a block of the Capitol building itself, and portions of the ground adjoining the Harn tract on the east are owned by the state for additional Capitol buildings. Can this court say that the drilling of oil wells in a neighborhood of that character would not be a nuisance and detriment to the community, and retard the progress of that section of the city as a choice residence section, and can the court say that the exercise of the police power by the city as exercised in the administration and enforcement of these ordinances is arbitrary, discriminatory, or confiscatory? The court thinks not, and is of the opinion that under all the allegations of the petition as construed with the evidence admitted by the parties to this action on the hearing on the motion, that said bill of complaint does not state a cause of action, and it is therefore dismissed with costs taxed against the complainant. To which an exception is allowed the complainant.