### FLORY v CRIPPS et

Ohio Appeals, 5th Dist, Licking Co

Decided Sept 17, 1936

Flory & Flory, Newark, for appellee.

James W. Shocknessy, Miss Florence G. Denton and Roderic Jones, Newark, for appellants.

470

**OPINION**

By SHERICK, J.

The Home Owners' Loan Corporation, appellant herein, appeals to this court on a question of law. The Licking County Building & Savings Company, a defendant to this action similarly affected by the order complained of, does not except or appeal therefrom.

The cause had its inception in the Probate Court, wherein Robert H. Flory, appellee, as administrator, brought suit to sell the lands of his deceased intestate for the purpose of paying the debts of the estate, the estate's personal property being wholly insufficient. The appellant answered, and the property was put to sale and purchased by the appellant mortgagee for a sum considerably less than the amount of its ascertained judgment lien. The trial court, in its order of distribution, ordered that appellant pay as a part of the costs of the proceeding its proportionate share of the administrator's fees and fees to his attorney for their serving in the land sale proceedings. It is not questioned but that these allowances were reasonable. It is this portion of the order of distribution that is objected to and appealed from.

The questions presented necessitate the recitation of several further facts in that the corporation's mortgage 'from Cripps bears a date of January 8, 1934. Cripps died September 21, 1935. This proceeding was commenced on November 2, 1935. No payments were ever made upon the mortgage indebtedness and by its terms its conditions were broken ninety days after its execution, and the mortgage became absolute. §10510-46, GC, as it now stands amended, 116 Ohio Laws 385, 402, under which the appellee maintains the correctness of the Probate Court's order, was enacted May 14, 1935. Its effective date is September 2, 1935.

That portion of §10510-46, GC, drawn in question prescribes, that:

"The sale price of real estate sold shall be applied and distributed as follows:

"1. To discharge the costs and expenses of the sale, including reasonable fees to be fixed by the court for services performed by attorneys for the fiduciary in connection with the sale, and such compensation, if any, to the fiduciary for his services in connection with the sale as the court may deem warranted and fix, which costs, expenses, fees and compensation **shall be paid prior to any liens upon the real estate sold and notwithstanding the purchase of such real estate by a lien holder.** * * *."

That portion of the section emphasized indicates the principal change made in the statute. Its immediate predecessors, §10510-46, GC, 114 Ohio Laws 460, and §10809, GC, recited that, "The money arising from the sale of real estate shall be applied as follows:" Neither of these repealed sections contained the language employed at the end of the section as it now stands enacted. If it were not for these recent amendatory changes this court would, without hesitation, follow the rule established in Stone v Strong, 42 Oh St 53; Andrews, Assignee v Johns, 59 Oh St 65, 51 NE 880; and State ex Fulton, Supt. of Banks v Griffith, Admr., 127 Oh St 161, 187 NE 121.

As we now see it, three questions are here presented for our determination. First: Does the amendment of 1935 indicate a legislative intent to charge as a part of the costs of the suit a reasonable fee for the fiduciary and his counsel for their services when a mortgagee purchases the property for a sum less than the amount of its adjudged lien against the property? Second: If the intent and purpose of the amendment as enacted were to so charge a purchasing mortgagee who purchased for less than his lien, then does the statute to that extent take the mortgagee's property without due process of law and impair the obligation of contract, or deny it the equal protection of the law by granting special privileges to the fiduciary and his attorney? Third: If such legislative intent and purpose be found, and the statute in the respect questioned be held constitutional, then must it be considered in the instant controversy to be retroactive in character and hence inapplicable and improperly invoked?

A reading of the three Supreme Court cases previously noted discloses that they are not decided upon constitutional grounds but upon the then statute's incompleteness,

and the fact that there were no "proceeds" of sale unless the property was purchased by the lien holder for a sum in excess of the adjudicated lien. In Andrews v Johns, supra, the court, considering old Revised Statutes, §§6165 and 6168, held that the terms "money arising from the sale of real estate" and the word "proceeds" as found in the respective sections were used by the Legislature as synonymous terms. The appellant now admonishes us that cost statutes are in derogation of the common law and must therefore be construed strictly. It is here maintained that the wording of the present section, "the sale price of real estate" is in fact one and the same as the two earlier phrases, and that the Legislature so purposed and intended. On the other hand the appellee advances that the section pertains to a remedy and, being remedial, it should be construed liberally. But when it is remembered that the present section was proposed by the State Bar Association through its probate committee, subsequent to the adjudication of the Griffith case, supra, to correct what it thought to be an injustice worked by the necessity of that decision, the closing words of the present act, that such fees and expenses be taxed as costs and paid "notwithstanding the purchase of such real estate by a lien holder" cannot lightly be passed over, or it be said that the Legislature ineffectively employed words it did not comprehend to effect the purpose intended. We think the statute is clear in its language and intent and sufficient within itself. The words "the sale price of real estate" were not intended to be synonymous with the earlier court interpretations of similar phrases but were intended to apply in a case such as this, where the mortgagee purchased for a sum less than his lien. It was not necessarily intended that the mortgagee should pay to the fiduciary in cash the full purchase price but that he should pay into court these additional fees and expenses as a part of the costs of the land sale proceeding for it is he only that financially profited by the sale of the premises. He stood by and accepted the benefits derived from the act of the fiduciary which inured to his sole advantage. He knew that such a proceeding was customary when the contract of mortgage was executed and that the fiduciary was bound in law to institute land sale proceedings if the estate's personal property was insufficient to pay its debts. It is urged that to effect this purpose the present amended statute should have gone further and

directly stated that such was to be the rule when a mortgagee purchased for less than his adjudged lien. The Legislature well knew that any such purchase would be for more, equal or less than the amount of the lien. It provided no exception when sold to a lien holder for less. It ill behooves this court to write in a judicial exception to that which was clearly not intended, for a mortgagee would seldom if ever be heard to complain if he bought for more than his lien claim. The 1932 section countenances such a course. The 1935 section went further and embraced that which the Griffith case held not to be included under the 1932 act.

Is the section in respect to its application to a mortgagee who purchased the property for less than the amount of his lien unconstitutional upon the theories contended for? We think not. The appellant says that the condition of its mortgage having been broken before sale and instigation of suit that it alone held the legal title to the land and that all the administrator might dispose of was the equity of redemption. Strictly speaking, this is true under the Ohio theories as between the parties to the mortgage. But if the statutes are examined it will be found that the Probate Court is not empowered to sell lands subject to existing liens. The fact is that a fiduciary is empowered to sell the fee free of all liens. This is of course an advantage to the estate's general creditors, but be that fact as it may, a mortgagee knows that when he takes a mortgage and after breach and the mortgagor dies, that the mortgagor's representative may sell the fee which the mortgagee holds as between the parties. His neglect to foreclose his lien cannot deprive the deceased's general creditors from participating in the sale price of the real estate over and above the costs made and the existing lien. A mortgagee knows that he may foreclose his lien after forfeiture and that certain costs and expenses, including attorney fees, are bound to follow, and that fees paid his attorney will automatically cause him to eventually recover a sum less than his lien in the majority of cases. He further is advised that if he foregoes foreclosure, that in case of death, the mortgagor's fiduciary must proceed to sell within a specified time and that such land sales also bear the burden of costs and expense of attorney services. To the members of this court it seems inconceivable that a mortgagee through indifference or design may neglect to do that which he should do for his own

protection and cause another, to-wit, a fiduciary, to doubly bond himself and to perform valuable services for him without expense, should· the mortgagee purchase for a· sum less than his lien. From the statute it will be perceived that the estate's representative and his attorney will not profit if the lands be not ordered sold; they only are to be paid for their labor when the action is properly brought and the land sold. It is but just and equitable that the enforced laborer should be compensated, and that the matter of taxing costs to meet that expense of enforced labor is the proper subject of legislation. We see nothing therein that would be inimical to sound public policy.

Sec 10510-46, GC, without question, pertains to the remedy. Its character is therefore remedial. Since the time of **Bell v Bates, 3 Ohio 380, and Farrier v Cairns, 5 Ohio 45,** it has been repeatedly adhered to, that "Costs are, therefore, entirely dependent upon statute, and may be regulated, changed or entirely ˙ taken away at the will of the Legislature." **11 Ohio Jurisprudence, 12 and 13.** The principle of Chicago & Alton Rd. Co. v Tanbarger, 238 U. S. 67, 76, 59 L. Ed. 1204, 35 S. Ct. 678, in that "No person has a vested right in any general rule of law or policy of legislation entitling him to insist that it shall remain unchanged for his benefit," is well recognized; for no one has a vested right to a particular remedy, but as said in Farrier v Cairns, supra, in reference to costs, "this must depend upon the statute law in force at the time judgment should be rendered."

Notaries, court stenographers, guardians ad litem and trustees for insane persons are compensated for their services rendered in court proceedings by the taxing of costs. We are unable to perceive why a fiduciary commanded by law to institute land sale proceedings is not equally worthy of compensation in like manner, specially where he reaps the harvest for a mortgagee's sole benefit which that mortgagee neglects and permits him to garner.

The appellant says that the allowance of attorney fees as a part of the costs is against public policy. Such an allowance is not imposed as a penalty, neither is it covenanted as a threat to enforce payment of a debt. It is not proposed as a penalty for forcing one to resort to the courts for relief, but is a statutory allowance granted to a winning party· to compensate him for services rendered. Not all allowances for attorney fees are odious as will be perceived upon examination of the cases listed in the note appearing in 11 A.L.R. 884. We do not find that the statute is unconstitutional in the respects herein claimed.

We are of the opinion that the answer to the third query is to be found in the first paragraph of the syllabus of **Smith v N. Y. C. Rd. Co., 122 Oh St 45, 170 NE 637.** Therein it is held that:

"A statute which relates exclusively to remedial rights is not within the purview of the constitutional inhibition against the legislative enactment of retroactive laws."

For, as stated, in the opinion, at page 48 that "retroactive laws refer to those which create and define substantive rights, and which either give rise to, or take away, the right to sue or to defend actions at law."

This court has had previous occasion, in **Matthews v Raff, 45 Oh Ap 242, 186 NE 887, (15 Abs 94)** to reach a like conclusion. The judgment of the Probate Court is affirmed.

Judgment affirmed.

LEMERT, PJ, and MONTGOMERY, J, concur: