## Louisville & Nashville Railroad Company, et al. v. Board of Drainage Commissioners of Daviess County, et al.

(Decided February 14, 1919.)

### Appeal from Daviess Circuit Court.

1.  Eminent Domain—Drains—Railroads—Closing Rights of Way and Rebuilding Track.—By subsection 13 of section 2380, Kentucky Statutes, railroad companies are expressly required to bear the expense of closing their rights of way and rebuilding their tracks, bridges, &c., made necessary by the improvement of a natural water course by a board of drainage commissioners in the erection

of a drainage district, their recovery being limited to the expense of opening their rights of way for such purpose

2. Eminent Domain—Drain—Rialroads—Constitutional Law.—Since the erection of the drainage district has for its purpose the drainage of a portion of the state to make it healthful and fit for habitation and cultivation, the same is an exercise of the state's police power, and is not within the protection of the guaranties of section 242 of the State Constitution, and hence the act authorizing such improvement is not a violation thereof, in denying to a railroad company compensation for injuries or damages resulting therefrom.

TRABUE, DOOLIN & CRAWFORD, BROWDER & BROWDER, W. P. SANDIDGE, R. V. FLETCHER and BENJAMIN D. WARFIELD for appellants.

J. R. HAYS, C. W. WELLS and W. FOSTER HAYS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This appeal necessitates the construction of portions of section 2380 of the Statutes and section 242 of the Constitution of the state, appellants contending that the former does not place upon them the burden of bearing the expense of building a new bridge and tracks across Panther creek, a natural watercourse, made necessary by the widening thereof, and the removal of the existing satisfactory bridge and tracks across the same, by the valid establishment of a drainage district under our laws; and that if the statute, by its terms, does so provide, it violates the constitutional provision, both of which contentions were denied below.

1. The applicable portions of the statute are:

"Subsection 13. At the time agreed upon the said railroad company shall remove its rails, ties, stringers and such other obstructions as may be necessary to permit the dredge to excavate the channel across its right of way. The work shall be so planned and conducted as to interfere in the least possible manner with the business of said railroad. In case the railroad company refuses and fails to remove its track and allow the dredge to construct the work on its right of way it shall be held as delaying the construction of the improvement and such company shall be liable to a penalty of fifty dollars per day for each day of delay, to be collected by the board of drainage commissioners for the benefit of the drainage district as in the case of other penalties. Such penalty may be collected in any court having jurisdiction and

shall inure to the benefit of the drainage district. Within thirty days after the work is completed, an itemized bill for the actual expense incurred by the railroad company for opening its tracks shall be made and presented to the superintendent of construction of the drainage improvement. Such bill, however, shall not include the cost of putting in a new bridge or strengthening or enlarging an old one. The superintendent of construction shall audit this bill, and, if found correct, approve the same and file it with the secretary of the board of drainage commissioners. The commissioners shall deduct from this bill the cost of the excavation done by the dredge on the right of way of said railroad company at the contract price, and pay the difference, if any, to the railroad company.

"Subsection 14. It shall be the further duty of the board of viewers to assess the damages claimed by anyone that is justly right and due to them for land or property taken, injured or destroyed, because of the construction of the improvement, or for any other legal damages sustained, including the actual estimated amount saved on account of private ditches utilized. Such damage shall be considered separate and apart from any benefit the land would receive because of the proposed work, and shall be paid by the board of drainage commissioners when funds shall come into their hands."

It will be seen that the legislature provided that where a drainage improvement crosses a railroad's right of way, the company must open its right of way by removing its rails, &c., and such other obstructions as are necessary to permit the construction of the drain across its right of way, and shall be recompensed by the board of drainage commissioners for expense thus incurred "for opening its tracks," but that such bill "shall not include the cost of putting in a new bridge or strengthening or enlarging an old one." It seems to us conclusive that the legislature, while manifestly dealing with the injury or damage such an improvement might impose upon a railroad company in crossing its right of way, by providing for what portion of its expense the company might present a bill, and what such bill should not include, expressed as clearly as was necessary to make its meaning understood, and provided in express terms that the company could not recover the expenses of closing its right of way or putting in a new bridge or strengthening or enlarging an old one. A provision that the company must bear

the expense of closing its right of way and a new bridge or the improvement of an old one to make it serviceable, would scarcely have been more explicit.

So that so far as this section alone is concerned, we are quite confident the meaning is clear and at least prohibits the company from including in its bill of expenses to be presented within thirty days after it opens its right of way, the cost of a new bridge as well as the expense of closing its right of way, though made necessary by the improvement alone, and this appellants contend is its only meaning and that a railroad company, just as any other landowner, under subsection 14, not by presenting a bill therefor, but by assessment by the viewers, is entitled to recover its damages, including the cost of a new bridge and the expense of closing its right of way, resultant from the drainage improvement; but we are unable to bring ourselves to this view of the meaning of the two sections, especially when considered in connection with subsections 11 and 12 of the act, the former of which provides for the adjustment of costs and benefits between the drainage board and the county or city authorities when a public highway is crossed, while section 12 provides for assessing the value of benefits against railroad companies, and section 13 for the allowance to them for such expenses as was thought proper, clearly indicating that the legislature meant to and dealt separately and differently with the damages resulting to public highways and railroads, from those incurred by other landowners; and that section 14 applies only to the last class, and has no application whatever to damages done either to public highways or railroads, so we conclude by subsection 13 of the act, the legislature expressly imposed upon railroad companies the expense of a new bridge and of "closing" its tracks, made necessary by the enlargement of a natural watercourse across its right of way.

As there is no cross-appeal and neither party is complaining of the lower court's ruling that so much of section 13 as authorizes the commissioners to deduct from the company's bill the cost of excavation done by them on the right of way is invalid, that question has not been considered and is not passed upon.

2. It is conceded by appellants that unless restrained by section 242 of the Constitution, the legislature had the power to place this entire expense upon the railroad companies, as was held by the Supreme court of the United

States in C. B. & Q. R. Co. v. Illinois, 200 U. S. 561, 50 Law Ed. 596, upon a writ of error to the Supreme Court of Illinois, affirming the judgment of that court, holding a similar Illinois statute valid, and in which all questions of a violation of any provision of the Federal Constitution were eliminated; but it is insisted by counsel for appellants (1) that as the Supreme Court of the United States accepts as conclusive, unless violative of some provision of the Federal Constitution, the construction put upon state laws and constitutions by the state court of last resort, that opinion only forecloses federal questions and does not reach the question here, and (2) that because the provision of the Illinois Constitution dealing with the same subject is materially different from section 242 of our Constitution, the opinion of the Supreme Court of that state in the same case, 212 Ills. 103, is not authority here.

We shall consider the two propositions in the order stated, and while the first is technically true it is of no practical force since section 242 of the state's Constitution, though somewhat broader in that it requires compensation for injuries in the absence of a physical invasion, is in substance but the same guaranty to its citizens that the provisions of the Fourteenth Amendment of the Federal Constitution, resorted to by the railroad company and considered by the court in that case, vouchsafe to the citizens of every state in the union, as to their property rights; and therefore, when the federal Supreme Court decided that an Illinois statute, similar to ours and not in more convincing terms, expressly authorized the taking or injury or damage, whichever it was, of a railroad company's right of way, by a public drainage corporation without compensation; and that a valid exercise of such delegated power was an exercise of the state's police power, because it was an improvement of a portion of the state, so as to make it healthful and fit for habitation and cultivation, and therefore not within the protection of the federal guaranty to all of the people of the union in the enjoyment and possession of their property, that opinion is necessarily of the highest and most binding authority to the effect (1) that our statute is an express delegation of authority to the drainage commissioners to take or injure or damage the railroad company's property without adequate compensation, whenever necessary in the creation of a drainage district; and (2) that such a taking or injury or damage is not within the protection of the

similar guaranty of the state Constitution to its citizens as to their property rights, because it was an exercise of the state's police power. That opinion is so sound in reasoning and supported by such an abundance of authority that it would be a waste of time to do more than simply refer to it as conclusive authority that section 2380 of the statutes is an express delegation of the state's police power, and as such is not within the inhibition of section 242 of the Constitution.

But counsel argue that because in City of Henderson v. McClain, 102 Ky. 402, it was held that section 242 of our Constitution is an enlargement upon the guaranties of the Bill of Rights and the Fourteenth Amendment, so as to authorize a recovery for injury or damage where there was no taking or physical invasion, that any federal test of the validity of the law is not conclusive. This argument, however, is transparently unsound as applied here because the enlargement is of course of what theretofore existed, that is within the protection of the guaranties, but not of course to any case wholly without such protection, as is always the exercise of the state's police power. The consequences of counsel's conclusions are that under section 242 of the Constitution the state in the exercise of its police power may take, but can not injure or damage private property without compensation, the mere statement of which brings down at once the whole structure of their argument.

Counsels' second proposition stated above is also disposed of by the conclusions already reached, but in addition is the fact that in the case of City of Henderson v. McClain, *supra,* this court denied the truth of appellant's major premise by holding that the provision of the Illinois Constitution upon the same subject then in force, as well as when the Illinois case, *supra,* was decided, was substantially the same as our section 242.

The two cases from this court upon which appellants rely do not sustain, but rather refute their contention, since in the first, L. & N. R. Co. v. Hopkins Co., 153 Ky. 718, the court assumes the legislature had the right in the exercise of its police power, to require a railroad company to abolish a grade crossing by building at its own expense an overhead bridge, but held the power as the county was attempting to exercise it had not been delegated, while in the other case, L. & N. R. Co. v. City of Louisville, 131 Ky. 128, an analogous claim for compensation for expenses incurred in erecting safety gates at

grade crossings, as required by city ordinance, was rejected upon the ground as stated in the opinion:

"It is generally considered that these duties, *which are exacted in the exercise of the police power, a railroad company is not entitled to compensation for performing.*"

For the reasons indicated the judgment is affirmed.