AUBERT J. FAY & others *vs.* JAMES F. CORBETT & another, administrators, & another.

Middlesex.    January 15, 1919. — July 30, 1919.

Present: RUGG, C. J., LORING, BRALEY, & CROSBY, JJ.

*Equity Pleading and Practice,* Master: report of evidence, exceptions to report; Decree, Appeal. *Evidence,* Extrinsic affecting writings.

A suit in equity was referred to a master under a rule directing him "to hear the parties and their evidence, to find the facts and report the same to the court, together with such portions of the evidence as he thinks may be necessary to enable this court to pass upon any question of law raised and reported." After the master had furnished the parties with copies of his report, the plaintiff for the first time asked the master to report all the evidence before him, and, the master refusing to do so, he moved, after the report was filed, that certain portions of the evidence, not reported by the master, be reported. The motion was denied. *Held,* that the denial of such motion was within the discretion of the court.

Where, after a hearing of the plaintiff's exceptions to a master's report in a suit in equity, an interlocutory decree is entered overruling the exceptions and confirming the report, from which no appeal is taken, and a final decree then is entered dismissing the bill, from which the plaintiff appeals, the exceptions to the report cannot be considered, under R. L. c. 159, § 26, if it does not appear that the final decree is erroneously affected by the interlocutory decree.

From the findings, without a report of the evidence, by a master to whom was referred a suit in equity to compel the return to the plaintiff of certain shares of the capital stock of a corporation, which, it was alleged, the plaintiff had transferred to the defendant under the provisions of an oral contract for the financing of the corporation, which the defendant was alleged to have broken, it appeared that there was no such oral contract as that alleged by the plaintiff, that there was a contract made in writing for the financing of the corporation, the consideration for which was the transfer to the defendant of the shares which the plaintiff was seeking to recover, that the plaintiff did not contend that any fraud was practised upon him by the defendant or that there was any mistake on his part when he signed the contract, that the plaintiff was not misled nor deceived by the defendant, that the contract was not unconscionable nor extortionate, and that the defendant did all that he was "called upon to do by the terms of the agreement and much more." *Held,* that the findings, in the absence of a report of the evidence, were not open to review on appeal; and that a decree dismissing the bill must be affirmed.

At the hearing of the suit above described, oral evidence, tending to show that the actual consideration for the making by the defendant of the agreement in writing above described was the transfer to the defendant by the plaintiff of the shares of stock which the plaintiff by the suit was seeking to have returned to him, was held to be admissible, where the agreement made no statement whatever as to the transfer of those shares, but mentioned only certain shares which were transferred to the defendant as collateral.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 17, 1914, seeking to compel the return to the individual plaintiffs of certain shares of the stock of the plaintiff the Carleton and Hovey Company, alleged to have been transferred to the defendant under the provisions of an oral contract as to the financing of that corporation, which the defendants were alleged to have broken.

The suit was referred to a master under a rule described in the opinion.

The agreement in writing ("Exhibit A") of July 23, 1904, was as follows, the testimonium clause and signatures being omitted:

"Agreement made this twenty-third day of July A. D. 1904, by and between Aubert J. Fay and Edgar L. Fay, both of Lowell in the County of Middlesex and Commonwealth of Massachusetts, hereinafter called parties of the first part, and John C. Burke and James F. Corbett both of said Lowell, hereinafter called parties of the second part, witnesseth: —

"Whereas said parties of the first part constitute the majority and principal stockholders of the Carleton & Hovey Company, a corporation duly organized under the laws of the State of New Jersey and having its principal place of business in said Lowell, and are desirous of obtaining additional financial aid for said Company; and

"Whereas said parties of the second part have rendered and are about to render to said Company and to said parties of the first part, directly or indirectly, financial assistance as aforesaid.

"Now, therefore, in consideration of the premises the said parties of the first part have this day transferred to said parties of the second part, each 2760 shares of the preferred stock (Certificates numbered A 104 and A 105) and 4135 shares of the common stock (Certificates numbered 118 and 119) of said Carleton & Hovey, they the said parties of the second part to hold said stock as collateral.  And said parties of the second part hereby

agree themselves to hold said stock as collateral as aforesaid but strictly in accordance with the terms of this agreement and subject to the terms of any subsequent agreement which may be made by and between the parties hereto and which by consent of the parties hereto may be considered as a part of these presents.

"Said parties of the second part further agree in the absence of default on the part of the parties of the first part to hold said stock but solely for the benefit of the said parties of the first part to account to the parties of the first part for all dividends declared upon said stock and for any other profits accruing to them as holders thereof. And said parties of the second part further agree at the termination of this agreement to transfer said holdings to said parties of the first part or their legal representatives or to any other person or persons by them properly designated. Said parties of the first part further agree during the existence of this agreement to devote their entire care and attention to the services of said Carleton & Hovey Company but without compensation other than that which may accrue to them as stockholders therein. Said parties of the first part also agree that the sum of money to be expended in any one year in the conduct of the company's business shall not without consent in writing of all parties hereto be in excess of the amount to be hereinafter provided for in a subsequent agreement.

"Said parties of the second part agree to continue the present management of the company's business so long as said management adheres strictly to the terms of this or any subsequent agreement.

"Said parties of the first part further agree not to operate in any new territory or to make any additional advertising contracts without the consent in writing of all parties to these presents.

"And it is further agreed that upon the reorganization of the Carleton & Hovey Company that the present proportional interest of each party shall be preserved. Said parties of the first part also agree to furnish upon request upon all notes to be signed by said parties of the second part in pursuance of this agreement in addition to the name of Carleton & Hovey Company and their own personal signatures, the signature of Fay Bros. & Hosford. It is further agreed that the credit to be afforded shall not for the present exceed twenty-five thousand dollars and hereafter shall

not exceed the sum to be named in a subsequent agreement to be hereafter executed by and between the parties hereto.

"It is agreed that the subsequent agreement herein referred to shall be made and executed not later than three months from the date hereof. It is hereby agreed that in the event of failure to agree upon all the terms of the proposed subsequent agreement heretofore referred to, that either party may after a lapse of ten days from the date of said failure terminate this contract forthwith. And said parties of the first part hereby agree to pay to said parties of the second part as liquidated damages the sum of ten thousand dollars within thirty days thereafter, and will release or cause to be released the said parties of the second part from all liability as endorsers or otherwise incurred in consequence of this agreement. And said parties of the second part in that event agree to re-transfer to said parties of the first part their entire holdings of stock in said Carleton & Hovey Company."

Findings of the master as to this contract were as follows:

"Previous to July 23, 1904, neither Mr. Burke nor Mr. Corbett was the owner of stock in the company. On July 23, 1904, one hundred and twenty-five shares of preferred stock and one thousand four hundred and thirty-seven shares of common stock were transferred into the name of John C. Burke, and one hundred and twenty-five shares of preferred stock and one thousand four hundred and thirty-eight shares of common stock were transferred into the name of James F. Corbett. This stock came from A. J. Fay's holdings and represented a quarter interest in the company, and according to the plaintiffs, was given in consideration of the alleged oral agreement to finance the company and, according to the defendants, was given in consideration of the execution and fulfilment of the terms of the written contract of July 23. For the purposes of the case, it is called the compensation stock. On the same day, July 23, 1904, there were handed to Messrs. Burke and Corbett certificates representing two thousand seven hundred and sixty shares of preferred and four thousand one hundred and thirty five shares of common stock. The certificates were indorsed in blank for transfer by their owner, Aubert J. Fay, but were never transferred on the books of the company. For the purposes of the case, this stock is called the collateral stock. By using the collateral stock, Messrs. Burke and Corbett could

dictate the management of the company as it constituted, with the compensation stock, a majority of both classes of stock, and, if transferred into their names, would give them the voting control of the company.

"The collateral stock was demanded by and given to Messrs. Burke and Corbett solely for the purpose of giving them the voting control of the company. It had no value as collateral for loans and was not intended to be used for that purpose. . . .

"The compensation stock was not the consideration for an oral agreement, but was the consideration for the written agreement which was executed on the day the stock was transferred. . . .

"The proposed subsequent agreement mentioned in the agreement of July 23, 1904, was never thereafter requested or suggested by either of the parties, and no such agreement was entered into." The "collateral stock" all was returned to the plaintiff.

Other findings of the master which are material to this decision are described in the opinion. Objections of the plaintiff to the report, numbering thirty-one, covered twenty printed pages of the record.

The motion of the plaintiff for a report by the master of certain evidence, described in the opinion, and exceptions of the plaintiff to the master's report were heard by *Pierce,* J. He denied the motion and by his order an interlocutory decree was entered overruling the exceptions and confirming the report, from which the plaintiffs did not appeal. Later a final decree was entered dismissing the bill, from which the plaintiffs appealed.

*S. L. Whipple,* (*A. Lincoln* with him,) for the plaintiffs.

*B. B. Jones,* for the defendants.

CROSBY, J. This is a bill in equity wherein the plaintiffs seek to have returned to them certain shares of preferred and common stock of the Carleton and Hovey Company, — one of the plaintiffs named in the bill, — which stock was issued to the defendant Corbett and to John C. Burke, now deceased.

The plaintiffs also seek to recover damages alleged to have been suffered by reason of the failure of Burke and Corbett (hereinafter referred to as the defendants) to perform the terms of an alleged oral agreement. The Lowell Trust Company, as pledgee of the stock delivered to Burke, also is joined as a defendant. The ground for the relief prayed for is the alleged failure of Burke and

Corbett to furnish the corporation with all the capital required to finance its business under the terms of the alleged oral agreement, whereby the defendants were to furnish such capital and as compensation therefor were to have the shares of stock in question.

It also is alleged that as a part of the oral agreement the defendants were to advance in the first instance not more than $25,000; and, in accordance with such advancement, a preliminary agreement in writing dated July 23, 1904, was entered into by the parties (a copy of which is annexed to the bill and marked "Exhibit A"). This agreement provided that the defendants were to furnish a credit which "shall not for the present exceed twenty-five thousand dollars and hereafter shall not exceed the sum to be named in a subsequent agreement to be hereafter executed by and between the parties hereto;" and that the subsequent agreement referred to should be executed within three months from July 23, 1904, and failing to do so either party had a right to terminate the agreement, in which event the plaintiffs were to pay the defendants $10,000 and to release them from liability on notes given to raise the required capital, and the defendants were to transfer the stock so held by them to the plaintiffs together with certain other shares in the plaintiff corporation which were to be transferred to the defendants as collateral.

The bill states that it was agreed that the alleged oral agreement was not to be superseded or abrogated by the written contract; that the defendants furnished capital only to the amount of $41,000, which has since been paid by the plaintiffs; that the defendants have been released from liability on account of the obligations thereby incurred; that the collateral stock has been returned by the defendants to the plaintiffs; and that by reason of the defendants' refusal to furnish the full amount of capital required under the terms of the alleged oral agreement the corporation has suffered damages estimated at $300,000.

It is the contention of the defendants that there was no agreement between the parties other than the written contract of July 23, 1904, which was entered into by the defendants at the solicitation of the plaintiffs; that they were induced to make this contract by reason of the false representations of the individual plaintiffs respecting the financial condition of the corporation; that the defendants furnished the plaintiff company capital to the

amount of $57,000 by guaranteeing and indorsing notes which were discounted at different banks; that in 1905 it was mutually agreed between the parties that the defendants should not be required to furnish additional financial assistance to the plaintiffs and should not be entitled to receive from them the sum of $10,000 mentioned in the written agreement and that the plaintiffs should not ask for a return of the compensation stock.

The case was referred to a master to whose report the plaintiffs filed thirty-one objections and saved an equal number of exceptions based thereon. After the master had furnished to each of the counsel a draft of his proposed report, the plaintiffs for the first time requested him to report all the evidence, and to annex to the report certain exhibits. The order of reference to the master was "to hear the parties and their evidence, to find the facts and report the same to the court, together with such portions of the evidence as he thinks may be necessary to enable this court to pass upon any question of law raised and reported." Under this order the master was authorized and required to report only such portions of the evidence as in his judgment were necessary to enable the court to decide any question of law raised on the record. *Parker* v. *Nickerson,* 137 Mass. 487. *Bowers* v. *Cutler,* 165 Mass. 441. He was not required to annex to the report the exhibits as requested by the plaintiffs.

At the hearing before a single justice, the motion of the plaintiffs that the master be required to report certain portions of the evidence was denied. It was entirely within his discretion to order the evidence or any part of it reported. *Bowers* v. *Cutler, supra.*

After a hearing on the plaintiffs' exceptions the single justice filed a memorandum in which he stated the grounds and reasons for his decision, and entered an order that the exceptions be overruled and the report confirmed; thereafter an interlocutory decree was entered to that effect. No appeal was taken from the decree overruling the exceptions and confirming the report. We have examined carefully the objections upon which the exceptions are founded, and which need not be recited, and are of opinion that the exceptions cannot be considered under R. L. c. 159, § 26, as it does not appear to us that the final decree is erroneously affected by the interlocutory decree overruling the exceptions and

confirming the report. *Burnett* v. *Commonwealth,* 169 Mass. 417. Although the plaintiffs did not appeal from the decree overruling the exceptions to the report, it was open to them on this appeal from the final decree to argue on the facts found by the master that the decree is not warranted. *French* v. *Peters,* 177 Mass. 568. *Lyons* v. *Elston,* 211 Mass. 478.

The only evidence reported by the master relates to the interview had in July, 1905, between the plaintiffs and the defendant Corbett. Upon an examination of this evidence we are satisfied that the findings based thereon, in view of the other findings, were not unwarranted. The other findings, made upon evidence which is not reported, are conclusive.

It appears from the report that the written agreement of July 23, 1904, was the only agreement made by the parties; that the stock delivered to the defendants, which the plaintiffs seek to recover, was the consideration for the agreement; that at the time it was entered into the Carleton and Hovey Company was in an insolvent condition and the stock then had only a speculative value; that the defendants came to the assistance of the plaintiffs at their earnest solicitation; that the plaintiffs were not misled nor deceived by the defendants; that there was no claim on the part of the plaintiffs that any fraud had been practised upon them by the defendants or that there was any mistake on their part when they signed the written agreement and that it was not unconscionable nor extortionate. The master further finds that the defendants "did all they were called upon to do by the terms of the agreement and much more." In view of these findings and other findings which need not be recited, it is manifest that they are not open to review since the evidence is not before us. *Kennedy* v. *Welch,* 196 Mass. 592, 594. *Schneider* v. *Hayward,* 231 Mass. 352.

The case at bar falls within the class where the actual consideration for an agreement may be shown by oral evidence, *Ely* v. *Wolcott,* 4 Allen, 506, *Way* v. *Greer,* 196 Mass. 237, and cases collected at page 245, and is plainly distinguishable from cases like *Goldenberg* v. *Taglino,* 218 Mass. 357, and *Glackin* v. *Bennett,* 226 Mass. 316.

As we find no error of law the decree must be affirmed, with costs.

*So ordered.*