## Bowman et al. v. Board of Councilmen of City of Elizabethtown.

October 4, 1946.

Harlan Heilman and Sam Manly, III for appellants.

D. M. Cooper for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

William O. Bowman and Charles Rogers owned a corner lot located in Elizabethtown on the south side of Dixie Avenue where Robertson Street runs into the Avenue. They had an agency to sell motor cars and intended to build a garage and filling station on this lot. In compliance with a city ordinance they applied to the council for a building permit. The council did not act upon their application and appellants started grading their lot preparatory to building thereon. Previously, the council had passed an ordinance on July 16, 1945,

which made it unlawful to erect a business building on any part of a lot located in a block the buildings in which were used exclusively for residential purposes and imposed a heavy fine for its violation.

Bowman and Rogers instituted this equitable action in the Hardin Circuit Court and alleged in their petition that the ordinance requiring a building permit was void because it failed to prescribe any reasonable standards governing the discretion of the council in granting or refusing a building permit. It was further alleged that the ordinance of July 16th did not apply to their proposed building as all of the buildings in the block in which their lot was located were not used exclusively for residential purposes. Their petition further alleged that they were suffering irreparable damages by reason of the city's delay in not granting them a building permit; that it was threatening to prosecute them for violating this ordinance, and an injunction was asked against the city to prevent it from interfering with their constructing a garage building.

The city's answer and counterclaim was a traverse, followed by an affirmative plea that the ordinances attacked were valid and that the building appellants proposed to erect was in a block in which all the buildings were used exclusively for residential purposes. The chancellor refused to grant an injunction and this appeal followed.

From a stipulation and a map contained in the record, we find there are two filling stations in operation on the north side of Dixie Avenue opposite the lot on which appellants propose to build. By an ordinance the mayor was authorized to appoint a Planning and Zoning Commission, and to preserve the status quo the council passed the "stop-gap" ordinance of July 16th which provides:

"That it shall be unlawful for any person to construct or begin the construction or excavation for construction of any building other than a residence on any lot or part of lot situated in a block, the buildings in which are used exclusively for residential purposes. * * *

"The word 'block' as used herein shall be construed to include that area of land facing on one street.

avenue or public way and lying between two intersecting streets, avenues or public ways, or between one intersecting street or public way and the city boundary line.''

As the stipulation shows there are two filling stations operated on the north side of the street opposite their lot, appellants insist that the ordinance of July 16th does not prevent them from erecting a business building thereon, since all the present buildings in the block are not used exclusively for residential purposes. The city contends that the word ''block'' as used in the ordinance does not take in both sides of Dixie Avenue but means ''a square or portion of a city enclosed by streets,'' as defined in Webster's Dictionary, and as the two filling stations are on the opposite side of the street from appellant's lot, they are not in the same block as the lot. The city cites Board of Councilmen of City of Frankfort v. Brislan, 126 Ky. 477, 104 S. W. 311. A reading of the Brislan case shows that this court in construing a street improvement statute gave no such meaning to ''block,'' but held the word as used there designated length and usually signified the distance between street intersections; or if there was no intersection, then the length of a block is to be determined by evidence.

The definition of ''block'' as contained in the ordinance of July 16th clearly takes in both sides of a street or avenue lying between intersecting streets. Had it not so defined ''block,'' then appellants cite a case which we think contains a practical and common sense definition of the term and one which we feel the council must have had in mind when enacting this ordinance. We quote from Chamberlain v. Roberts, 81 Colo. 23, 253 P. 27:

''The question is whether the store on the side of the street opposite the plaintiff excludes the location from the prohibition of the ordinance. The word 'block' in the ordinance is susceptible of two interpretations. It may mean land surrounded by four streets, or it may mean both sides of the street measured from one intersecting street to the next. Under the first meaning, if the store were on the opposite side of the street from the proposed filling station, the buildings on the block would still be used exclusively for dwelling purposes and the erection of the station would be forbidden; but, if the latter meaning be correct, such building would be within the block, and the buildings in the block would therefore

not be all used exclusively for dwelling purposes. We think the second meaning should be accepted.

"The purpose of the ordinance is to keep dwelling areas free from the annoyance of business buildings, but to except sections where business is already introduced because the annoyance is already there. The annoyance of a building opposite would be as great as and often greater than one on the same side of the street. There is, therefore, as much reason to except the one as the other, and the first interpretation would prohibit a business building on one side even though the opposite buildings were all for business, which does not seem reasonable."

The ordinance requiring a building permit states that the person who proposes to erect a building should file an application with the city clerk showing the location of the lot on which it is to be constructed, the kind of materials to be used in the walls, foundation and roof, the size and dimensions of the building and its approximate cost. There must accompany the application a sketch, or drawing, showing a general design of the building, its location on the lot and its distance from the street. The ordinance further provides that the council in passing on the application will take into consideration "the fire hazard or other objections that may be made for the erecting or construction of said building and its adaptability to the use for which it is intended. And if the said building does not conform to standard of other buildings in the same block, or if it shall create a fire or other hazard to the immediate community, action by the council on said application may be deferred until the applicant shall modify the plans of construction."

It has long been the rule in this jurisdiction that an ordinance requiring a building permit which prescribes no standards with which the owner must comply, or by which the discretion of the body which grants or refuses the permit is controlled, is arbitrary and invalid. City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Board of Trustees of Town of Bloomfield v. Bayne, 206 Ky. 68, 266 S. W. 885; Darlington v. Board of Councilmen of City of Frankfort, 282 Ky. 778, 140 S. W. 2d 392; Town of Jamestown v. Allen, 284 Ky. 347, 144 S. W. 2d 807. We can see no material difference between this ordinance which requires a building permit than the fourth section

of a similar ordinance set out in the Bloomfield opinion, wherein it was held that the ordinance was invalid because it set up no standards to guide the council in granting or refusing the permit and vested that body with arbitrary power. Therefore, we are constrained to hold the ordinance before us requiring a permit to build is invalid.

Having reached the conclusions herein expressed, we deem it unnecessary to decide the other questions raised in briefs. The judgment is reversed with directions to enter one in conformity with this opinion.