ALCIDE G. PAQUETTE & others *vs.* CITY OF FALL RIVER.

Bristol.   November 3, 1958. — January 15, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Building Laws. Municipal Corporations,* By-laws and ordinances. *Constitutional Law,* Police power, Due process of law, Ex post facto law, Building laws. *Declaratory Judgment. Equity Jurisdiction,* Declaratory relief. *Equity Pleading and Practice,* Master: findings, report of evidence; Inferences.

Where a conclusion of a master is not based solely on the subsidiary findings included in his report and the evidence is not reported, the conclusion is binding on the trial judge and on this court unless the subsidiary findings demonstrate that the conclusion is unsound. [373]

Summaries of evidence, not the subject of any question of law, included in the report of a master not ordered to report the evidence had no standing in this court. [373]

A concession by a city in a suit in equity against it for a declaratory decree as to the validity of its "housing ordinance," that the operation by the plaintiff of "cold water flats" in a dwelling owned by him in the city was not claimed by it to constitute an "offensive trade" did not justify an inference by the trial judge that the flats were not a nuisance, fire hazard, or health menace. [373]

In view of provisions of a city's "housing ordinance" for appeals to a board of appeal from decisions of the superintendent of public buildings, for hearings by the board on such appeals, and for power in the board to affirm, annul or modify the superintendent's decisions and to grant variances of the ordinance, and of a right to judicial review, a ruling that the ordinance vested in the superintendent the power of enforcement of the ordinance "with no right of review of his decision[s] by any appellate authority" was erroneous. [373–374]

The owner of a dwelling which did not comply with the "housing ordinance" of the city in which it was located, who had not received any notice of a violation of the ordinance from the superintendent of public buildings pursuant to a provision thereof that in the event of a violation the superintendent should serve a notice stating the nature of the violation and the corrective measures required, and who consequently had had no occasion to appeal from any action by the superintendent to the board of appeal established by the ordinance, had no standing to contend that as applied to him and his dwelling the ordinance was arbitrary, unreasonable and unconstitutional, but it was open to him to challenge by a suit in equity for a declaratory decree under G. L. c. 231A the jurisdiction of the superintendent and the board of appeal under the ordinance, with the qualification that the court's declaration would be confined to the questions raised by him in the suit in so far as the ordinance was shown to apply to him. [374–375]

A "housing ordinance" of a city enacted pursuant to G. L. c. 143, § 3, as amended, imposing under a penalty for every dwelling in the city certain requirements as to installation of facilities, space of rooms and other matters, was, with respect to existing dwellings not complying with it, prospective in its operation and applied to violations which came into existence upon its passage or continued thereafter, was not beyond the scope of the enabling statute, and did not violate art. 1, § 10 of the Constitution of the United States or art. 24 of the Declaration of Rights of the Constitution of Massachusetts. [375]

The owner of a building erected in full compliance with contemporary law holds it subject to proper exercise of the police power. [376]

In a suit for a declaratory decree as to the validity of a "housing ordinance" of a city enacted pursuant to G. L. c. 143, § 3, as amended, in the interest of safety, health and morals, brought by the owners of dwellings erected prior to passage of the ordinance and containing "cold water flats" which would require substantial installation of

facilities and alterations in order to comply with it, a final decree should be entered declaring that the ordinance was not shown on the record to be invalid or unconstitutional as applied to the plaintiffs, that it was in general scope within the authority of the enabling statute, that it was not an ex post facto law, and that no violation of the Fourteenth Amendment to the Constitution of the United States or of the Constitution of Massachusetts, Part II, c. 1, § 1, art. 4, or of art. 1 of the Declaration of Rights was shown. [376–377]

BILL IN EQUITY, filed in the Superior Court on December 9, 1955.

The suit was heard by *Smith,* J., upon a master's report.

*David Entin,* Corporation Counsel, *(John T. Farrell, Jr.,* Assistant Corporation Counsel, with him,) for the defendant.

*H. William Radovsky,* for the plaintiffs.

*Benjamin Horvitz,* by leave of court, submitted a brief as amicus curiae.

WILKINS, C.J.    The plaintiffs, owners of "cold water flats," bring this bill under G. L. c. 231A for a declaration as to the validity of "Housing Ordinance of the City of Fall River" enacted on October 13, 1955 (c. 28 of Revised Ordinances, 1948), pursuant to G. L. c. 143, § 3 (as amended through St. 1951, c. 85). The case was referred to a master, who filed a report which was confirmed. The judge ruled that "the ordinance, as enacted, is arbitrary, unreasonable and unconstitutional," and reported the case upon the pleadings, the master's report, the judge's "findings and rulings of law," such decree to be entered as justice and equity may require.

The master found these facts. "Cold water flats" constitute about twenty-five per cent of the housing accommodations of the defendant city and "usually comprise a kitchen (about fourteen feet by twelve feet), two bedrooms (each about seven feet by ten feet), a pantry and a toilet, with plumbing for only cold water in sink and toilet, and with one electrical fixture in the center of the ceiling of each room, without window screens or door screens furnished by the owner, and normally accommodating a family of three or four persons. . . . The piping installation is the usual one provided in Fall River and there is sufficient water in

every flat for the purpose of drinking, washing utensils and clothes, and washing the body of the tenant or occupant. Hot water is available for any tenant who wishes to rent from the Fall River Gas Company a hot water tank which is set up in the cellar and operated by gas, for a rental of $1.99 a month."

The plaintiffs are residents of Fall River who now own, and have owned for at least fifteen years, many buildings containing "cold water flats." These do not comply in numerous respects with the ordinance, which applies to every dwelling in the city. The sections of the ordinance, the validity of which is challenged, include the following.

Sections 3 (a) and 3 (b) relating to inspection of dwellings. Sections 5 (a) and 7 (c) requiring the installation of facilities for hot water. Section 5 (b) requiring the installation of lavatory basins and bathtubs or showers. Section 7 (a) requiring the installation of room heating facilities. Sections 8 (a) and 8 (d) requiring the installation of window and door screens and specific window area, and § 12 (a) 2 requiring owners and occupants to maintain door and window screens unless the rental agreement provides otherwise. Section 9 (a) requiring two separate electrical outlets for illumination for every habitable room. Sections 10 (a) 2, 10 (a) 4, 10 (g), and 10 (i) requiring water closet and bathroom floors to be made of terrazzo, tile, concrete, linoleum, or similar material; requiring floors, plaster, and paint to be in a certain condition; and requiring railings or parapets on roofs. Section 11 (a) requiring every dwelling unit to contain at least 150 square feet of floor space for the first occupant and at least 100 additional square feet for each additional occupant. Section 11 (b) requiring that in every dwelling unit of two or more rooms every sleeping room shall contain at least seventy square feet of floor space for one occupant and an additional fifty square feet for each additional occupant. Section 11 (f) requiring access to every living room and bedroom and to at least one water closet compartment without passing through a bedroom, bathroom, or water closet compartment.

We summarize other findings of the master. As a result of the ordinance, the market value of the buildings containing the flats has depreciated thirty to forty per cent because of the expenditures necessary to comply with the requirements as to hot water and baths or showers. The regulations of the State department of public health establishing minimum standards for housing have not been accepted by Fall River, and the board of health of the city has not adopted such standards. See G. L. c. 111, §§ 128B–128F, as amended through St. 1954, c. 447, § 2. The preliminary study of the ordinance was made by a group composed of employees of the fire, police, and public buildings departments, the planning board, and other representative citizens. "The ordinance is based upon and in large measure is identical with the Minimum Standards of Fitness for Human Habitation as adopted by the Massachusetts department of public health." The requirements of §§ 5 (a), 5 (b), 5 (c), 7 (a), 7 (c), 8 (d), 10 (a) 2 and 4, 10 (g), 10 (i), and 12 (a) 2 are of "appreciable benefit to health." The requirement of § 9 is "an appreciable aid to safety." The requirements of §§ 11 (a) and 11 (b) are "of appreciable benefit to health and safety." The requirements of § 11 (f) are "of appreciable benefit to the morals of the occupants." "If it is within my power as master to make a finding that the ordinance is a reasonable exercise of the police power of the city of Fall River for the prevention of fire, and the preservation of life, health and morals, I do so find."

The judge in "findings and order for decree" repeated many of the master's findings and briefly described the sections of the ordinance which were challenged. He also stated the following. "The ordinance is of general application, without any exemption clause. It applies with equal force to all dwellings, whether the latter are of relatively modern origin, architecturally acceptable and structurally sound; or, on the other hand, whether the buildings are old and in a state of deterioration. The ordinance is penal and provides cumulative penalties for successive days when there is a failure of compliance with its detailed specifications. It

vests in the superintendent of public buildings the power of enforcing its provisions, leaving to his judgment what is deemed by him to be a violation with no right of review of his decision by any appellate authority. Literally construed, as applicable to all buildings, it would affect the . . . [plaintiffs] whose property in most instances, if not all, had been in existence for many years prior to the enactment of the ordinance." The judge also referred to a brief submitted by the city in which it was stated, "No claim is made by the city that the operation of 'cold water flats' is an offensive trade," and drew "an inference that the 'flats' were neither nuisances, fire hazards, or health menaces."

The rule to the master was in the usual form "to hear the parties, find the facts, and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." As the master's conclusion was not based solely on his subsidiary findings, the trial judge and we are bound by it "'unless the subsidiary findings included in the report are sufficient in themselves to demonstrate that the conclusion must be unsound in law.' *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435." *Shoer* v. *Daffe,* 337 Mass. 420, 423. The summaries of the evidence introduced by the plaintiffs and by the defendant are not the subject of any question of law now material. They are not findings and must be disregarded. *Fay* v. *Corbett,* 233 Mass. 403, 409. *Kilkus* v. *Shakman,* 254 Mass. 274, 277. *Wood* v. *Baldwin,* 259 Mass. 499, 508–509.

The judge was not justified in inferring from the concession made by the city, in effect that it did not contend that the operation of "cold water flats" is an offensive trade, that the flats are not a nuisance, fire hazard, or health menace. We must disregard that inference.

There was error in the ruling that the ordinance vests in the superintendent of public buildings the power of enforcement "with no right of review of his decision by any appellate authority." This statement overlooks § 4 of the ordinance entitled "Board of Appeal." Section 4 (a) desig-

nates the planning board to act as a board of appeal to hear appeals from decisions of the superintendent of public buildings. Section 4 (b) reads: "Any person aggrieved by the refusal of the superintendent of public buildings to issue a permit on account of the provisions of this chapter, or by the issuance of a permit, or by any decision, ruling, or order of the superintendent of public buildings, may appeal to the board of appeal within fifteen days from the date of the action appealed from, by giving notice in writing to the superintendent of public buildings and to the board of appeal. After notice given to such persons as the board of appeal shall order, a hearing shall be held, and the board of appeal shall affirm, annul, or modify such refusal, decision, ruling, or order of the superintendent of public buildings." Section 4 (c) reads in part, "The board of appeal may vary the application of this chapter in specific cases in which enforcement would involve practical difficulty or unnecessary hardship and wherein desirable relief may be granted without substantially derogating from the intent and purpose of this chapter but not otherwise." There would then be a right to judicial review, whether by extraordinary writ, or by appeal under G. L. c. 143, § 55, we need not now decide.

General Laws c. 143, § 3, pursuant to which the ordinance was enacted, reads: "Every city . . . for the prevention of fire and the preservation of life, health and morals, by ordinances . . . consistent with law . . . may regulate the inspection, materials, construction, alteration, repair, demolition, removal, height, area, location and use . . . of buildings and other structures within its limits . . . and may prescribe penalties not exceeding one hundred dollars for every violation of such ordinances . . . ." As was said in *Commonwealth* v. *Atlas*, 244 Mass. 78, 82, "That statute is a constitutional exercise of the police power."

No notice of violation, as provided in § 2 of the ordinance,[1]

---

[1] Section 2 (b) provides as follows: "In the event of a violation of any part of this ordinance the Superintendent of Public Buildings shall serve notice in writing of such alleged violation to the owner, his agent or the occupant, as the case may require stating the extent and manner of the violation and the corrective measures required, and the time within which such violation shall be removed or other required act be performed." — REPORTER.

has been issued to any plaintiff by the superintendent of public buildings. Consequently, there has been no occasion to resort to the board of appeal. At the present time no plaintiff is in a position to contend that the provisions of the ordinance as applied to him and his property are plainly arbitrary and unreasonable and have no rational relation to any of the purposes for which the police power may be legitimately exercised. See *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 279, and cases cited. A challenge to the jurisdiction, however, of the superintendent of public buildings and of the board of appeal under the ordinance is open. *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 470. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 247. But it is open with this qualification. Where the subject is as detailed as a housing ordinance containing many provisions and purportedly enacted pursuant to such a broad statute as G. L. c. 143, § 3, we cannot be expected to make, and we should not make, a declaration of general application to all persons and properties which might become affected. What we declare must be confined to the questions presently raised by the plaintiffs in so far as the ordinance is shown to apply to them.

The plaintiffs contend that the ordinance is beyond the scope of the enabling act because (1) it is applicable to existing structures and (2) is an ex post facto law since "cold water flats" have no "inherent tendency to impair the health or comfort of the people or to increase unduly the risk of fire or lawlessness." With respect to the first part of this argument, the ordinance "is prospective in its operation, and applies to violations which continue after its passage, or which then come into existence." *Commonwealth* v. *Roberts*, 155 Mass. 281, 283. There is no violation of the Constitution of the United States, art. 1, § 10, or of art. 24 of the Declaration of Rights. The second part of this argument may be conveniently considered along with the plaintiffs' other constitutional objections.

The ordinance by. establishing minimum requirements as

to the conditions of occupancy of dwellings constitutes an invasion of vested property rights. But such an invasion is not necessarily unlawful. It is a settled principle that all contract and property rights are held subject to the fair exercise of the police power, *Chicago & Alton R.R.* v. *Tranbarger*, 238 U. S. 67, 77, and an owner of property acquires no immunity against its exercise by constructing a building in full compliance with contemporary laws. *Queenside Hills Realty Co. Inc.* v. *Saxl*, 328 U. S. 80, 82. *Commonwealth* v. *Roberts*, 155 Mass. 281. See *Baker* v. *Boston*, 12 Pick. 184, 194; *Commonwealth* v. *Alger*, 7 Cush. 53, 84–85.

It is true that the determination by the Legislature, or here by the city, "as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." *Lawton* v. *Steele*, 152 U. S. 133, 137. But the decision as to what measures are necessary for the preservation of life, health, and morals is in the first place a matter for the legislative authority, and every presumption must be made in favor of the validity of statutes or ordinances enacted to further those objectives. *Commonwealth* v. *O'Neil*, 233 Mass. 535, 540. *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life*, 319 Mass. 301, 305. *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 139.

There are no findings in the master's report which rebut the presumption of validity. That there is no finding that the plaintiffs' "cold water flats" constitute a menace to the health, safety, or morals of the public is without significance.

Similar housing codes have been sustained elsewhere. *Petrushansky* v. *Maryland*, 182 Md. 164. *Givner* v. *Commissioner of Health of Baltimore City*, 207 Md. 184, 189–190, 192. *Adamec* v. *Post*, 273 N. Y. 250. *Richards* v. *Columbia*, 227 S. C. 538. See *State* v. *State Bd. of Health*, 233 Iowa, 872, 876; *Brennan* v. *Milwaukee*, 265 Wis. 52, 54.

We have tried to consider all points which have been argued by the plaintiffs with sufficient definiteness to amount to a

compliance with Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

The order for a decree declaring the ordinance void as arbitrary, unreasonable, and unconstitutional is reversed. Instead a final decree is to be entered declaring that the ordinance is not shown by the plaintiffs on the record in this case to be invalid or unconstitutional as applied to them; that the ordinance is in general scope within the enabling act; that the ordinance is not an ex post facto law; and that no violation of the Fourteenth Amendment to the Constitution of the United States, or of the Constitution of the Commonwealth, Part II, c. 1, § 1, art. 4, or of art. 1 of the Declaration of Rights has been shown.

*So ordered.*