CITY OF LOUISVILLE et al., Appellants,

v.

Joseph A. THOMPSON et al., Appellees.

Court of Appeals of Kentucky.

Sept. 30, 1960.

Rehearing Denied Dec. 2, 1960.

William E. Berry, Robert L. Durning, Jr., Marshall B. Woodson, Jr., Louisville, for appellants.

H. Bemis Lawrence, Samuel Steinfeld, Louisville, for appellees.

PALMORE, Judge.

This is a declaratory judgment proceeding challenging the validity of so-called "hot bath" ordinances adopted by the City of Louisville in 1956 as amendments to its "Minimum Standards for Habitable Buildings" ordinance of 1954, and questioning also a further amendment, adopted in 1957, providing for exemptions in hardship cases. The attack is made by class representatives of (a) the various owners and occupants of property affected by the legislation and

(b) real estate agents who, in representing such owners, are also subject to it.

The judgment of the trial court declared certain portions of the amendments invalid except as to new construction or conversion of property to residential use after June 13, 1956; held the hardship amendment ineffective because it provided no standards for the determination of exceptions; and, as we understand it, in effect construed the legislation as inapplicable to real estate agents in the management of property of other persons subject to its provisions. With all of this we disagree.

The 1954 ordinance outlawed the outside frost-proof flush toilet and, among other things, required *inside* each dwelling unit a privately enclosed flush toilet and a kitchen sink, both connected to an approved water and sewer system. It provided for a grace period of 36 months in which to comply. The validity of that ordinance is conceded.

The 1956 amending ordinances, which were silent as to a grace period, required that each dwelling unit be equipped with an inside bathroom including a toilet, lavatory basin, and bathtub or shower, and further required that each kitchen sink, lavatory basin, bathtub and shower be connected to hot and cold water lines, with water heating facilities, and to the public sewer. These requirements are alleged to be unreasonable, exceeding the bounds of the city's police power, and therefore an unconstitutional invasion of the property rights affected. Among a shower of arguments is the contention that the absence of a grace period makes the laws ex post facto. The trial court was of the opinion that the requirements are unreasonable, arbitrary and void under the 14th Amendment of the federal constitution and §§ 2 and 13 of the Kentucky Constitution.

The hardship clause of the 1957 amending ordinance, held invalid on the authority of Bowman v. Board of Councilmen, 1946, 303 Ky. 1, 196 S.W.2d 730, reads as follows:

"Where the literal application of the requirements of Sections 43–30 to 43–38 * * * would cause undue hardship an exception may be granted upon written application therefor by a written order approved and signed by both the health officer and the housing director. Such orders of exception shall be made only when it is clearly evident that reasonable safety and sanitation is assured, and such orders may be conditioned in such a manner as to achieve that end. Such conditions may include restrictions not generally specified by this ordinance."

The ordinances under consideration were enacted pursuant to the general police powers of the city and the further authority of KRS 83.330, which specifically empowers a first class city to "enact and enforce ordinances regulating the construction, reconstruction, alteration, maintenance, sanitation, sanitary facilities, inspection, rehabilitation, safety and control of, and the prevention of fire in, buildings, dwellings and structures of all types and descriptions, whether used for human habitation or otherwise, within such city." Together with that statute and KRS Chapter 99 the ordinances are part of a nationwide program to protect the health, safety and welfare of the public by the elimination of substandard housing. In The Housing Act of 1949, 63 Stat. 413, amended as The Housing Act of 1954, 68 Stat. 590, 42 U.S.C.A. § 1441 et seq., the federal government requires a workable program "to eliminate, and *prevent* the development or spread, of slums and urban blight" (42 U.S.C.A. § 1451(c), with emphasis added) in order for cities to qualify for loans and grants for urban renewal projects.

Whereas KRS Chapter 99 seeks to eliminate slums and blighted areas, the objective of the municipal requirements herein dispute is to prevent the development of such conditions. It would seem obvious that these two purposes have the same relationship to the public health, safety, morals and welfare. Therefore, the deter-

mination by this court in Miller v. City of Louisville, Ky.1959, 321 S.W.2d 237, to the effect that slum clearance and urban renewal are within the legitimate scope of the police power applies with equal force to the minimum housing standards adopted by the City of Louisville. The only question is whether they are reasonable.

Comparable regulations have been upheld as reasonable in all states where they have been tested in the courts of last resort, being Maryland, Massachusetts, South Carolina, and Wisconsin. Givner v. Commissioner of Health of Baltimore City, 1955, 207 Md. 184, 113 A.2d 899; Paquette v. City of Fall River, 1959, 338 Mass. 368, 155 N.E.2d 775; Richards v. City of Columbia, 1955, 227 S.C. 538, 88 S.E.2d 683; Boden v. City of Milwaukee, 1959, 8 Wis. 2d 318, 99 N.W.2d 156.

 That the trial court must have thought the requirements of the 1956 ordinances to be essentially reasonable is implicit in his sustaining their validity as to future construction or conversion. Legislation that is otherwise reasonable does not necessarily become unreasonable because it may require the repair, improvement, or even the removal of existing property in order to comply with it. Adamec v. Post, 1937, 273 N.Y. 250, 7 N.E.2d 120, 109 A.L. R. 1110, and annotation following. That we are not here dealing with a "tenement house" law is of no significance. A separate dwelling house without decent bathing facilities is just as conducive to disease and delinquency as a flat in a tenement house without such facilities. In the great thickly-populated cities of a country that prides itself as the most civilized in the world there is no longer any reason for the continued existence of such conditions. The legislative authority of the City of Louisville in the exercise of its police powers has determined that the $800 to $1,000 per dwelling unit estimated by appellees as the probable cost of complying with the building code can be better afforded by the individuals directly affected than the public can

afford the unassayable results of submarginal sanitary facilities.

"Miserable and disreputable housing conditions may do more than spread disease and crime and immorality. They may also suffocate the spirit by reducing the people who live there to the status of cattle. They may indeed make living an almost insufferable burden. They may also be an ugly sore, a blight on the community which robs it of charm, which makes it a place from which men turn. The misery of housing may despoil a community as an open sewer may ruin a river." Berman v. Parker, 1954, 348 U.S. 26, 75 S.Ct. 98, 102, 99 L.Ed. 27.

"A city has a broad discretion in the enactment of laws to preserve and promote the health, morals, security and general welfare of its citizens. Sufficient grounds exist for the enactment of an ordinance of this nature if it has substantial relation to a legitimate object in the suppression of the conditions which the city authorities deem detrimental to the public good." Shaeffler v. City of Park Hills, Kentucky, Ky.1955, 279 S.W.2d 21, 22. Where reasonable minds may differ the ordinance must stand as a valid exercise of the police power. City of Louisville v. Puritan Apartment Hotel Co., Ky.1954, 264 S.W.2d 888, 890. "In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation * * *." Berman v. Parker, supra.

 We are of the opinion that the minimum housing standards attacked in this litigation are reasonable and within the scope of the police powers of the City of Louisville and, specifically, violate neither the 4th, 5th or 14th amendment of the federal constitution nor sections 2, 13 or 242 of the Kentucky Constitution.

 A valid exercise of the police power resulting in expense or loss of property is not a taking of property without due process of law or without just compensation, nor does it abridge the equal protection clause of the 14th amendment. McQuillin, Municipal Corporations (3d ed.), Vol. 6, §§ 24.05,

24.06. Polsgrove v. Moss, 1913, 154 Ky. 408, 157 S.W. 1133; V. T. C. Lines, Inc. v. City of Harlan, Ky.1958, 313 S.W.2d 573, 575; Hutchinson v. City of Valdosta, 1913, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520; Queenside Hills Realty Co. v. Saxl, 1946, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096; Louisville & N. R. Co. v. Board of Drainage Com'rs, 1919, 183 Ky. 282, 209 S.W. 15.

■ The ordinances do not, as suggested by appellees, make unlawful that which was lawful when committed. No one is punishable for what may have been done or omitted prior to the ordinances, but only for what he may do or omit to do thereafter. The legislation therefore does not have an ex post facto effect. Paquette v. City of Fall River, supra; Chicago & A. R. Co. v. Tranbarger, 1915, 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 1204. As no grace period was expressly provided and it is obvious that a reasonable time must be allowed the affected parties in which to comply, we think the amended ordinance must be construed by necessary implication as allowing a reasonable time. Cf. Chicago & A. R. Co. v. Tranbarger, id. Such an interpretation is suggested by Section 43–37(1), which provides that in the event of a violation the person or persons responsible must be given written notice describing the violation and allowing "a reasonable time for the performance of any act it requires."

■ Section 43–31(h) of the amended ordinance defines an owner as including any person having charge, care or control of any dwelling or dwelling unit as owner or agent of the owner, and any person representing the actual owner must comply with the requirements applicable to the owner. Section 43–32 provides that no owner shall occupy, and *no person* shall let to another for occupancy, any dwelling or dwelling unit for living, sleeping, cooking or eating therein unless it complies with the minimum standards heretofore mentioned. It is therefore rather difficult to understand how the ordinance could be construed as not applying to an agent. Appellees contend

that an innocent agent would be punishable for the acts of his principal, or perhaps for the acts of a tenant. Laws must, however, have a reasonable interpretation. The agent is punishable if he lets for occupancy a nonconforming dwelling unit. Otherwise he is not. As under the liquor laws, the offense is malum prohibitum, but there is no reason why a rental agent should not be sufficiently familiar with the premises under his control to know whether they are equipped with the facilities required by the law. If the owner will not make them so, the agent must disassociate himself.

■ With respect to the hardship clause, it is to be noted that relief cannot be granted or withheld at the discretion of the administrator of the ordinance, but must be granted only on the basis of undue hardship and when it is clearly evident that reasonable safety and sanitation are otherwise assured. This criterion is reasonably adaptable to proof and findings of fact capable of judicial review, and for that reason we are of the opinion that the rule stated in Bowman v. Board of Councilmen, supra, does not apply. A similar criterion is common to adjustments and variances permitted under zoning legislation (see, for example, KRS 100.076) and elicited the following comment in Gorieb v. Fox, 1927, 274 U.S. 603, 47 S.Ct. 675, 676, 71 L.Ed. 1228:

"The proviso evidently proceeds upon the consideration that an inflexible application of the ordinance may under some circumstances result in unnecessary hardship. In laying down a general rule, such as the one with which we are here concerned, the practical impossibility of anticipating in advance and providing in specific terms for every exceptional case which may arise, is apparent. And yet the inclusion of such cases may well result in great and needless hardship, entirely disproportionate to the good which will result from a literal enforcement of the general rule. Hence the wisdom and necessity here of reserving the

## 874

authority to determine whether, in specific cases of need, exceptions may be made without subverting the general purposes of the ordinance. We think it entirely plain that the reservation of authority in the present ordinance to deal in a special manner with such exceptional cases is unassailable upon constitutional grounds."

 Other objections and numerous theories have been advanced in derogation of the ordinances in question, but we find them without merit. Suffice it to say that there is no conflict with the zoning statutes, KRS 100.031, or with KRS 318.130 and the plumbing code promulgated thereunder. They and KRS 83.330 are, as pointed out by the city in its exceptionally able briefs, to be read in pari materia, under the rule stated in Brown v. Hoblitzell, Ky.1956, 307 S.W.2d 739, 744.

The judgment is reversed with directions that a judgment in conformity with this opinion be entered.